UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| Luitpold Pharmaceuticals, Inc., | : | Case No. 11-cv-0681 (RJH) (THK) |
| Plaintiff, | : | |
| v. | : | Judge Richard J. Holwell |
| Ed. Geistlich Söhne A.G. Für Chemische Industrie, and OSTEOMEDICAL LTD. | : | |
| | : | |
| Defendants. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPORT OF PARTIES' RULE 26(f) CONFERENCE

1.   Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure ("FRCP"), a meeting was held on June 13, 2011, by telephone, and was attended by:

   a. Hunter Carter, Jennifer Bougher and Jeff Leung, attorneys at Arent Fox LLP for Plaintiff, and Chavah Gully, Practice Technology Specialist at Arent Fox LLP for Plaintiff; and

   b. Edward Pluimer, Joseph Hammell and Erin Davenport, attorneys at Dorsey & Whitney LLP for Defendants.

2.   Pursuant to the Individual Practices of Judge Richard J. Holwell ("IP") Rule 2(A), the parties provide the following description of the case:

   a. The attorneys of record for the parties are those listed in the signature block, below. The lead trial attorney for Plaintiff is Hunter Carter, and the lead trial attorney for Defendants is Joseph Hammell.

   b. The Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332(a)(2) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and Defendants are both citizens of a foreign country while Plaintiff is a citizen of the United States.

   c. **Plaintiff's description of the claims:**  The action arises out of Geistlich's unlawful termination of the parties' long-term agreements to distribute certain patented and trademarked dental regenerative products known as Bio-Oss, Bio-Gide (and related products) and Mucograft in the United States, Canada, Mexico, Central America, the Caribbean and Japan. The agreements expressly provided, in the Article entitled "Termination," that termination was permitted only for *mutual* convenience or upon incurable breach, neither of which occurred. Instead,

Geistlich repudiated for its unilateral convenience, contrary to the Termination clause, by serving a notice to terminate them based on the incorrect assertion that the agreements were of indefinite duration and unilaterally terminable after a reasonable time, contrary to New York law, the express terms of the termination provision in the agreements, and the parties' intent. In the entire history of the parties' relationship, Geistlich has never accused Luitpold of being in breach of any obligations under the agreements, and Geistlich's "termination notice" made no reference to any alleged breach on the part of Luitpold. On July 8, 2011 in connection with this Rule 26(f) report, Geistlich for the first time argued that Luitpold breached the agreement, but refused to provide any document demonstrating that any breach actually occurred or that Geistlich ever raised this issue before. Luitpold has, consistently and without exception, rejected Geistlich's "termination" of the agreements, instead deeming it invalid and of no effect. In connection therewith, Luitpold refused to accept Geistlich's termination date, and refused to agree to any conditions imposed by Geistlich for any other date of termination.

Under the agreements, if Geistlich fails to provide the requisite supply of Geistlich products, Luitpold is entitled to replacement manufacturing rights for Geistlich's refusal to supply the Products covered by the Agreements, and for Geistlich's breaches of the License Agreements through usurping the exclusive distributorship rights and engaging in marketing and sales in the territories that belong exclusively to Luitpold, Luitpold is entitled to all damages caused by the loss of the market in an amount to be shown at trial through expert testimony.

Separate and apart from the issues regarding termination, Geistlich breached the Bio-Oss and Bio-Gide License Agreements by using the marks in the Territories exclusively licensed to Luitpold in breach of the License Agreements (Counts 4, 6), and Geistlich breached the Bio-Oss Commercial Agreement in a way other than by failing to supply product, i.e. by failing to obtain Japanese regulatory approval (Count 3). In addition, Geistlich breached the Mucograft Commercial Agreement by failing to obtain regulatory approvals and delaying commercialization of the product in Luitpold's territories (Count 8). Defendants have not yet answered Luitpold's complaint, and thus have not asserted any counterclaims or defenses.

**Defendants' description of the claims:** Defendants deny each of Luitpold's claims; Luitpold has no basis for any relief against Defendants. A number of the salient facts and more obvious deficiencies of Plaintiff's suit are described in greater detail in Defendants' pending motion to dismiss. Briefly, Defendants properly and within their legal rights terminated the Bio-Oss and Bio-Gide Commercial and License Agreements after a relationship lasting more than seventeen years. These Agreements did not contain a term or duration and therefore were terminable at will, at least after a reasonable period of time, which was clearly the case here. Luitpold does not allege (nor could it) that it has failed to recoup its investment in these Agreements, which would be a legal prerequisite

to any claim by Luitpold that the termination was improper.  Luitpold chose to have the Bio-Oss and Bio-Gide Agreements terminate rather than accept another three-month extension, as had been done earlier.  Luitpold's dealings with one or more other companies relating to the distribution and/or sale of competing product(s) may constitute a material breach and render hollow Luitpold's claims.  Defendants have not terminated the Mucograft Agreements, which continue in force with no breach of any kind by Defendants.

d. A significant issue to be resolved in this case is whether Geistlich's termination of the Bio-Oss and Bio-Gide Agreements between the parties was permissible and effective under the parties' agreements, New York law, and/or other indicia of "reasonableness" of the term of the Agreements, and, if Luitpold proves that termination was improper, whether it constituted a repudiation of the Bio-Oss, Bio-Gide and Mucograft Agreements.  Additional issues are: (a) whether Luitpold is entitled to replacement manufacturing rights; (b) whether Luitpold is entitled to specific performance, whether Luitpold is entitled to damages, or both, and, to the extent that damages are proven and calculable, the amount of damages; (c) whether Geistlich failed to obtain the regulatory approvals required under the Bio-Oss Commercial Agreement; (d) whether Geistlich's own use of the trademarks licensed to Luitpold pursuant to the "exclusive, non-transferable" Bio-Oss and Bio-Gide License Agreements constituted a breach of those agreements; (e) whether Geistlich's alleged delays in commercializing Mucograft and its alleged failures to obtain regulatory approvals constituted a breach of the Mucograft Agreements; and (f) whether Geistlich is entitled to an FRCP 64 attachment of the patents and trademarks subject to the Agreements.

e. **Plaintiff's description of the relief it seeks:**  In Count 1, Plaintiff seeks a declaration that (a) Geistlich's notice purporting to terminate the Bio-Oss and Bio-Gide Commercial and License Agreements is invalid and of no effect; (b) Geistlich may not lawfully refuse to supply the product covered by the Bio-Oss and Bio-Gide Commercial and License Agreements; and (c) Geistlich is contractually required to release the Manufacturing Details to Luitpold, or to an alternative supplier who is ready, willing and able to supply all of Luitpold's requirements under the Bio-Oss Commercial Agreement.  Plaintiff seeks specific performance on its claims that Defendants repudiated the Bio-Oss Commercial and License Agreements (Count 2), the Bio-Gide License Agreement (Count 5) and the Mucograft Commercial and License Agreements (Count 9).  Plaintiff seeks damages arising out of Geistlich's failure to obtain Japanese Regulatory Approval as required by the Bio-Oss Commercial Agreement (Count 3), damages arising out of Geistlich's use of the trademarks exclusively licensed to Luitpold in breach of the Bio-Oss and Bio-Gide License Agreements (Counts 4, 6), and damages arising out of Geistlich's breaches of the Mucograft Commercial Agreement (Count 8).  Plaintiff also seeks pre-judgment attachment of the patents and trademarks subject to the Agreements pursuant to FRCP 64 (Count 7).

f. **Defendants' description of the relief it seeks**: Defendants seek dismissal with

prejudice of the claims that are the subject of the Motion to Dismiss. Since the remaining claims are minor, Defendants anticipate that the remaining claims will be dropped or readily resolved upon grant of the Motion to Dismiss. If the Motion to Dismiss is denied, Defendants will Answer the Complaint. Defendants also reserve the right to assert appropriate counterclaims.

3. Pursuant to IP Rule 2(B), the parties propose the following case management plan:

   a. The only pending motion is Defendants' motion to dismiss Counts 1, 2, 4, 5, 6, 7, and 9 of Plaintiff's Complaint (which, if granted, would dispose of all claims under the Bio-Oss and Bio-Gide Agreements and leave only Counts 3 and 8). That motion was filed on April 1, 2011, and has been fully briefed as of May 24, 2011.

   b. At this time, the parties do not expect that joinder of any additional parties will be necessary, and propose that the cutoff date for joinder of additional parties be 45 days prior to the completion of fact discovery, subject to modification for good cause.

   c. The parties propose that the cutoff date for amendments to pleadings be 45 days prior to the completion of fact discovery, subject to a determination on the pending motion to dismiss certain claims in the Complaint and further subject to modification for good cause.

   d. The parties propose the following schedule for completion of discovery:

      i. FRCP 26(a)(1) initial disclosures were exchanged on June 9, 2011.

      ii. On April 1, 2011, the Court ordered that fact discovery is to be completed by October 1, 2011. The parties will diligently pursue discovery in good faith. However the parties have now exchanged lists of discovery topics and discovery demands, and Defendants have done additional research concerning Swiss Law and the Hague Convention. Defendants believe that compliance with the Hague Convention procedures is required under Swiss criminal law. Luitpold objects, based in part on what it contends Geistlich represented during the April 1, 2011 conference with the Court, when the October 1, 2011 discovery cut-off date was set. The parties disagree as to what was said at that time. In any event, the parties anticipate that an extension of this deadline is unavoidable. The parties propose extending the October 1, 2011 fact discovery cutoff date to April 1, 2012, in order to accommodate any delay that may be occasioned by having to comply with Swiss law and the Hague Convention.

      iii. On April 1, 2011, the Court ordered that expert discovery is to be completed by January 1, 2012. Given that the fact discovery cannot

        reasonably be completed on the schedule initially set in this case, the parties very respectfully propose the following schedule for completion of expert discovery:

1. Plaintiff will disclose the identity of its expert witnesses and the general subject matter of their testimony by February 1, 2012;

2. By April 1, 2012, Plaintiff will produce its expert report(s) and required disclosures to Defendants;

3. Also by April 1, 2012, Defendants will disclose the identity of their expert witnesses and the general subject matter of their testimony;

4. Defendants will produce their expert report(s) and required disclosures to Plaintiff by June 1, 2012;

5. Also by June 1, 2012, the Plaintiff will disclose the identity of any expert witnesses (other than an expert already designated) for rebuttal purposes and the general subject matter of their testimony;

6. Plaintiff will produce its rebuttal expert report(s) and required disclosures to Defendants by August 1, 2012;

7. Also by August 1, 2012, Defendants will disclose the identity of any expert witnesses (other than an expert already designated) for rebuttal purposes and the general subject matter of their testimony; and

8. By October 1, 2012, Defendants will produce their rebuttal expert reports and required disclosures to Plaintiff.

    iv. Even if the fact discovery deadline is extended as proposed above, the parties request that the status conference scheduled by the Court to occur on October 7, 2011 at 10:00 am remain as scheduled, so that the Court can ensure that the parties are diligently participating in the discovery process.

e. The parties propose that the deadline for submitting a letter seeking a pre-motion conference (*see* IP Rule 3(A)) in connection with any proposed dispositive motion be no later than 8 weeks after the expert reports have been exchanged.

f. The parties propose that the deadline for filing a final pretrial order be six weeks after the Court's ruling on the dispositive motion(s) (other than the presently pending motion to dismiss), or, if there are no dispositive motions, no later than 8 weeks after all expert reports have been exchanged. The deadline for objections under FRCP 26(a)(3)(B) will be 3 weeks after the final pretrial order is filed.

g. Plaintiff has requested a jury trial.  The parties estimate that the case will be ready for trial on or about November 30, 2012 (calculated as 45 days after the filing of the final pretrial order).  Given the current state of the case, the parties estimate that the probable length of the trial would be 2-3 weeks.

4. Pursuant to IP Rule 2(C), the parties do not consent to proceed before a Magistrate Judge.

5. Pursuant to IP Rule 2(C), the parties have engaged in settlement discussions, so far without success.

6. **Plaintiff's Position:** Many of the Defendants' documents, information and witnesses are located in Switzerland.

   a. Depositions:  At the April 1, 2011, conference before the Court, in response to the Court's question about whether the discovery schedule would have to be expanded to account for securing depositions abroad and complying with the Hague Convention, Defendants' counsel represented that Hague Convention procedures would *not* be necessary and should therefore pose no scheduling issues.  However, at the parties' June 13, 2011 FRCP 26(f) conference, Defendants' counsel informed Luitpold's counsel that they would *not* produce witnesses outside of Switzerland and that compliance with the Hague Convention therefore *will* be required.  Geistlich subsequently agreed to produce some, but not all, of its party witnesses outside of Switzerland – some in London, and some in the United States, and has acknowledged that Swiss law would not apply to depositions conducted outside of Switzerland.  However, on July 6, 2011, Geistlich asserted for the first time that all but one of the individuals identified by Luitpold in its initial disclosures as an agent of Geistlich are not technically employed by Geistlich, but rather are employed by Geistlich's wholly-owned subsidiary Geistlich Pharma A.G; accordingly Geistlich refuses to produce these individuals for depositions pursuant to FRCP 30, and instead insists upon compliance with Swiss Law and the Hague Convention.  With respect to the other individual whom Geistlich concedes is a Geistlich employee, Geistlich has suggested that health issues may prevent him from traveling.  In short, Geistlich has assembled reasons why *none* of its employees or agents can be deposed other than in Switzerland and through Swiss law and the Hague Convention; for the reasons described below (and to be more fully discussed in a motion to compel by Plaintiff), Geistlich is incorrect.

      i. Each of the Geistlich-affiliated individuals identified in Luitpold's initial disclosures (Paul Note, Mario Mucha, Rolf Jeger, Flavio Zanon, Sylvia Morgan, Peter Fellmann and David Wemens) and the company by which they are employed (Geistlich Pharma A.G., the wholly-owned subsidiary of Defendant Geistlich) can be compelled to testify in the United States in connection with this proceeding pursuant to FRCP 30 and without regard to the Hague Convention or Swiss Law.  Each is, at a minimum, a

6

managing agent of Geistlich. *See, e.g., Schindler Elevator Corp. v. Otis Elevator Co.*, 2007 WL 1771509, No. 06-cv-5377 (CM)(THK) (S.D.N.Y. June 18, 2007). For example, Paul Note has on behalf of Defendant Geistlich engaged in business negotiations concerning the Agreements and intellectual property at issue, while Mario Mucha has negotiated with Luitpold's employees on behalf of Defendant Geistlich concerning Luitpold's purchase orders and the amount of product to be provided by Defendant Geistlich to Luitpold pursuant to the Agreements. Each of the individuals listed has communicated with Luitpold purportedly on behalf of Defendant Geistlich. Luitpold asked Geistlich to confirm whether or not those individuals have any authority to act on behalf of Defendant Geistlich with respect to Luitpold, and whether Defendant Geistlich repudiates or ratifies their actions purportedly on its behalf; counsel responded that "some of their actions may not be ratified." Geistlich's counsel stated that it would oppose any motion by Luitpold to compel their testimony pursuant to FRCP 30. Therefore, Luitpold expects that it will need to raise this issue with the Court via motion;

ii. Even putting FRCP 30 aside, to prevent the delays associated with compliance with the Hague Convention, Luitpold has offered to pay for the reasonable costs of Geistlich's deponents to travel to the United States. Courts frequently require Swiss defendants to appear in the United States to be deposed where plaintiff pays for the witnesses' reasonable travel expenses. *See, e.g.*, *Trusz v. UBS Realty Investors LLC*, 3:09 CV 268 JBA, 2011 WL 577331 (D. Conn. Feb. 8, 2011); *Schindler Elevator Corp. v. Otis Elevator Co*, 657 F. Supp. 2d 525 (D.N.J. 2009); *Triple Crown Am., Inc. v. Biosynth AG*, CIV.A. 96-7476, 1998 WL 227886 (E.D. Pa. Apr. 30, 1998); *Ward-THG, Inc. v. Swiss Reinsurance Co.*, 96 CIV. 8100(MBM), 1997 WL 83294 (S.D.N.Y. Feb. 27, 1997); *see also Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 536 (1987) (the Hague Convention "is not mandatory and serves only as a permissive supplement to the Federal Rules of Civil Procedure");

iii. Given that the parties are unable to resolve their dispute concerning FRCP 30 without the Court's intervention, Luitpold intends to pursue discovery through the Hague Convention on a parallel track, via Letters of Request. Defendants have agreed "in principle" to the issuance of Letters of Request by the Court to Switzerland to obtain documents and information from Defendant, the individuals identified in Luitpold's initial disclosures, and Geistlich Pharma A.G. The parties will continue to work together in good faith to agree to a Stipulated Proposed Order to be submitted to the Court, without prejudice to Luitpold's motion to compel the witnesses pursuant to Rule 30;

iv. Conclusion: Based upon both Defendants' representations at the April

7

>  conference and applicable law, discovery should proceed under the FRCP, and not the Hague Convention or Swiss Law, and depositions of Defendants' party witnesses should occur in New York, with Luitpold paying for the witnesses' costs of travel for those depositions. At the same time, the Court should issue Letters of Request to Switzerland under FRCP 28 and the Hague Convention, to ensure that discovery proceeds without delay.
>
>  b. <u>Written Discovery</u>: Geistlich has advised Luitpold that it is barred by Swiss law from responding to written discovery requests and that Swiss law bars Geistlich from obtaining documents from its wholly-owned subsidiary Geistlich Pharma A.G. absent Letters of Request pursuant to FRCP 28 and the Hague Convention. Geistlich has refused to have its Swiss counsel provide a written analysis to Luitpold of its position under Swiss law. The parties will continue their attempts to resolve the issue in good faith, but Luitpold presently anticipates that full resolution will require the Court's intervention. In addition, Luitpold intends to pursue discovery through the Hague Convention on a parallel track, via Letters of Request. Defendants have agreed "in principle" to the issuance of Letters of Request by the Court to Switzerland to obtain documents from Defendant Geistlich, Geistlich Pharma A.G. and the individuals identified, and The parties will continue to work together in good faith to agree to a Stipulated Proposed Order to be submitted to the Court.

6. **Defendants' Position:** Defendants, along with many of the Defendants' documents, information and witnesses, are located in Switzerland. Initially, Defendants anticipated that the parties would be able to proceed on a voluntary basis with respect to at least some aspects of the discovery process without the need to comply with all the requirements of the Hague Convention. Subsequently, Defendants' Swiss counsel advised Defendants that the requirements of the Hague Convention must be followed or Defendants would be exposed to potential criminal sanctions under Swiss criminal law. Such restrictions under Swiss law may impact the parties' ability to complete discovery under the current schedule. Defendants have and will continue to cooperate voluntarily in the discovery process to the extent permissible under applicable law, including Swiss law and the Hague Convention. For example, and without limitation, Defendants already have begun collecting relevant information and documents responsive to Plaintiff's discovery requests so that relevant, responsive information and documents can be produced, consistent with the requirement of Swiss law, once Plaintiff has complied with the procedures mandated by Swiss law and the Hague Convention.

In several respects, Plaintiff's position statement above mischaracterizes various issues and the positions taken by Defendants regarding discovery and Defendants' obligations to comply with applicable law. In contrast to Plaintiff, however, it is Defendants' view that a Rule 26(f) report is intended to state succinctly the issues raised and agreements reached pursuant to Rule 26 (which view also seems to comport more fittingly with this Court's requirements for a Rule 26 report, as indicated in the Court's Individual Practice, Section 2 "Scheduling Order Requirements"), and therefore Defendants will not join in

Plaintiff's approach of incorporating "mini-briefs" into this Rule 26(f) report.

    a.    <u>Depositions</u>: At the April 1, 2011, conference before the Court, in response to the Court's question about whether the discovery schedule would have to be expanded to account for the Hague Convention, Defendants' counsel stated he did not anticipate that Hague Convention procedures would be necessary, but offered no definite representation with respect to the same. In any event, Luitpold apparently assumed that the depositions would be in the United States, which not only was not something to which the parties agreed at the conference, but in fact was never discussed. Defendants' position is that, even putting aside any disputed issues with regard to the applicability of Hague Convention procedures, Defendants, their employees, and third party witnesses have the right to be deposed where they reside or work, as held by numerous courts. Defendants have indicated an openness to discussing the possibility of conducting some depositions in another location, but such discussions have so far been preliminary and no agreements have been reached. (For example, any deposition of Dr. Peter Geistlich must take into account his advanced age and the fact that he is on dialysis three times a week.) Additionally, as noted above, since the April 1 hearing, Defendants' counsel has been informed by Swiss counsel that Swiss criminal law prohibits depositions except in accordance with the provisions of the Hague Convention. Defendants will cooperate with Plaintiff in conducting depositions, including discussing in good faith the manner and location for conducting any depositions, but they obviously must do so in a manner consistent with Swiss law.

Defendants will continue to confer in good faith to attempt to resolve any discovery issues, including issues relating to the impact of Swiss law and the Hague Convention on discovery, and, potentially, on scheduling.

    7.    Pursuant to FRCP 26(f)(3)(C), the parties have begun discussions regarding disclosure and discovery of electronically stored information, and have not yet identified any issues other than those issues identified and addressed in the parties' proposed confidentiality agreement and protective order (*see* Item 8 below).

    8.    Pursuant to FRCP 26(f)(3)(D), the parties have agreed to the terms of the Confidentiality Agreement and Protective Order annexed hereto, which addresses the parties' concerns regarding confidentiality of information and their desire to preserve claims of privilege and work product protection. The parties propose and request that the Confidentiality Agreement and Protective Order be incorporated into the Court's scheduling order, and expressly agree that such Protective Order would apply to third parties who provide or receive information in connection with this litigation.

    9.    Pursuant to FRCP 26(f)(3)(E), the parties propose that the number of permissible document requests be limited to 63 requests by party. Plaintiff does not propose any other changes in the limitations on discovery imposed by the FRCP or by local rule. Defendants propose that each side be limited to ten fact depositions, subject to the ability to take more

depositions upon a showing of good cause, and that each side be able to depose every testifying expert identified by the opposing side.

10. Defendants have represented that some of the discoverable documents and information by Plaintiff are in German. The parties have agreed that any such documents will be provided by Defendants to Plaintiff in both their original German form, and translated into English. The parties have agreed to select a mutually acceptable translation service, and to split the cost of the translation service 50/50. Each party expressly retains the right to have any document translated, at their own election and expense, by a separate translation service.

Dated:  July 13, 2011

  /s/ Hunter T. Carter_____
Hunter T. Carter, Esq. (HC-1844)
carter.hunter@arentfox.com
Jennifer L. Bougher, Esq. (JB-6245)
bougher.jennifer@arentfox.com
ARENT FOX LLP
1675 Broadway
New York, NY  10019-5874
(212) 484-3900
*Attorneys for Plaintiff,*
*Luitpold Pharmaceuticals, Inc.*

  /s/ Joseph W. Hammell_____
Christopher G. Karagheuzoff (CK-1122)
karagheuzoff.christopher@dorsey.com
Dorsey & Whitney LLP
51 West 52nd Street
New York NY 10019
(212) 415-9200

Edward J. Pluimer
*pluimer.ed@dorsey.com*
Joseph W. Hammell
*hammell.joe@dorsey.com*
David Y. Trevor
trevor.david@dorsey.com
50 South Sixth Street
Minneapolis, Minnesota 55402
*Attorneys for Defendants,*
*Ed. Geistlich Söhne A.G. Für Chemische*
*Industrie, and OSTEOMEDICAL LTD.*