Hunter T. Carter (HC-1844)
Mark A. Bloom (MB-6082)
Jennifer L. Bougher (JB-6245)
Arent Fox LLP
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3946
Fax: (212) 484-3990
hunter.carter@arentfox.com
mark.bloom@arentfox.com
jennifer.bougher@arentfox.com

Martin Cunniff (admitted *pro hac vice*)
Arent Fox LLP
1717 K Street, NW
Washington, DC 20006-5344
Telephone: (202) 857-6000
Fax: (202) 857-6395
martin.cunniff@arentfox.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   x

| | | |
|---|---|---|
| Luitpold Pharmaceuticals, Inc., | : | Case No. 11-cv-0681 (KBF) (THK) |
| Plaintiff-Counterclaim Defendant, | : | ECF Case |
| v. | : | Judge Katherine B. Forrest |
| Ed. Geistlich Söhne A.G. Für Chemische Industrie, and OSTEOMEDICAL LTD. | : | |
| | : | |
| Defendants, Counterclaim Plaintiffs. | | |

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   x

**PLAINTIFF-COUNTERCLAIM DEFENDANT'S
MOTION *IN LIMINE* NUMBER 2
TO EXCLUDE EVIDENCE FROM DEFENDANTS,
COUNTERCLAIM PLAINTIFFS' DAMAGES
EXPERT MICHELE M. RILEY**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.     RILEY'S OPINIONS RELATING TO COUNTERCLAIM III (MARKETING EFFORTS) SHOULD BE EXCLUDED ........................................................... 2

     A.    Riley's Opinion is Unreliable Because She Relies on the Same Flawed Benchmark Analysis as Geistlich's Industry Expert, Martin Dymek .................... 2

     B.    Riley's Opinion Relating to Whether Luitpold Met its Contractual Obligations is Outside the Scope of Her Expertise and Consists of Improper Factual Narrative .................................................................................. 8

     C.    Testimony Regarding GEM 21S and Exhibits 8 and 8A to the Riley Expert Report Should be Excluded as Unreliable .......................................................... 11

II.    PREJUDGMENT INTEREST FOR BOTH COUNTERCLAIMS IS INCORRECTLY CALCULATED ................................................................................. 15

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                              **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
611 F. Supp. 1223 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 187 (2d Cir. 1987) ..................................3

*Arista Records LLC v. Usenet.com, Inc.*,
608 F. Supp. 2d 409 (S.D.N.Y. 2009)..........................................................................3, 10, 11

*Baker v. Urban Outfitters, Inc.*,
254 F. Supp. 2d 346 (S.D.N.Y. 2003)......................................................................................15

*Bausch & Lomb, Inc. v. Bressler*,
977 F.2d 720 (2d Cir. 1992)......................................................................................................2

*Boucher v. U.S. Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996) ...............................................................................................15, 17

*CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*,
815 F. Supp. 2d 673 (S.D.N.Y. 2011)........................................................................................5

*Colon ex rel. Molina v. BIC USA, Inc.*,
199 F. Supp. 2d 53 (S.D.N.Y. 2001)..........................................................................................6

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
650 F. Supp. 2d 314 (S.D.N.Y. 2009)......................................................................................15

*Deutsch v. Novartis Pharm. Corp.*,
768 F. Supp. 2d 420 (E.D.N.Y. 2011) .......................................................................................6

*Donovan v. Dairy Farmers of Am., Inc.*,
53 F. Supp. 2d 194 (N.D.N.Y. 1999)........................................................................................18

*EMI Music Mktg. v. Avatar Records, Inc.*,
364 F. Supp. 2d 337 (S.D.N.Y. 2005)................................................................................16, 18

*In re Executive Telecard Ltd. Sec. Litig.*,
979 F.Supp. 1021 (S.D.N.Y.1997)............................................................................................8

*Faulkner v. Nat'l Geographic Soc'y*,
576 F. Supp. 2d 609 (S.D.N.Y. 2008).......................................................................................6

*Fiataruolo v. United States*,
8 F.3d 930 (2d Cir.1993)..........................................................................................................10

*Gary Price Studios, Inc. v. Randolph Rose Collection, Inc.*,
No. 03 Civ. 969(CSH), 2006 WL 1319543 (S.D.N.Y. May 11, 2006) .................................3, 5

*Island Intellectual Prop. LLC v. Deutsche Bank AG*,
No. 09 CIV. 2675 KBF, 2012 WL 526722 (S.D.N.Y. Feb. 14, 2012) ...............................9, 10

*Mallis v. Bankers Trust Co.*,
717 F.2d 683 (2d Cir. 1983)...................................................................................16

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*,
No. 95 Civ. 3901, 1999 WL 946354 (S.D.N.Y. Oct. 19, 1999) ..............................10

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
476 F. Supp. 2d 1143 (N.D. Cal. 2007) .................................................................4

*R.F.M.A.S., Inc. v. So*,
748 F. Supp. 2d 244 (S.D.N.Y. 2010).................................................................5, 6, 7

*Rowe Ent'mt, Inc. v. William Morris Agency, Inc.*,
No. 98CIV8272(RPP), 2003 WL 22124991 (S.D.N.Y. Sept. 15, 2003) ..................3

*Schonfeld v. Hilliard*,
62 F. Supp. 2d 1062 (S.D.N.Y. 1999), *aff'd in part, rev'd in part*, 218 F.3d
164 (2d Cir. 2000)..................................................................................................8

*Schwimmer v. Allstate Ins. Co.*,
176 F.3d 648 (2d Cir. 1999)...................................................................................16

*Scott v. City of New York*,
591 F. Supp. 2d 554 (S.D.N.Y. 2008)................................................................5, 10

*Shatkin v. McDonnell Douglas Corp.*,
727 F.2d 202 (2d Cir. 1984)............................................................................13, 14, 17

*Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*,
232 F. Supp. 2d 289 (S.D.N.Y. 2002)...................................................................16

*Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*,
No. 95 Civ. 8136, 2001 WL 1602976 (S.D.N.Y. Dec. 14, 2001)..........................11

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991)................................................................................10

*United States v. Scop*,
846 F.2d 135 (2d Cir.1988)...................................................................................10

*Washington v. Kellwood Co.*,
2015 WL 2258098 (S.D.N.Y. April 21, 2015) ......................................................9

*Wheat v. Pfizer*,
31 F.3d 340 (5th Cir. 1994) ....................................................................................6

**STATE CASES**

*City of Binghamton v. Serafini*,
    778 N.Y.S.2d 547 (App. Div. 2004) ........................................................................18

*Cramer v. Spada*,
    610 N.Y.S.2d 662 (App. Div. 1994) ..........................................................................3

*Long Playing Sessions, Inc. v. Deluxe Labs., Inc.*,
    514 N.Y.S.2d 737 (App. Div. 1987) ........................................................................18

*Patane v. Romeo*,
    652 N.Y.S.2d 142 (App. Div. 1997) ........................................................................18

**OTHER AUTHORITIES**

Fed. R. Evid. 702 .........................................................................................................1, 3, 8

Fed. R. Evid. 704 ............................................................................................................10

Fed. R. Evid. 803 ............................................................................................................17

N.Y. C.P.L.R. § 5001 ......................................................................................................16

N.Y. C.P.L.R. § 5004 ...................................................................................................16, 18

# INTRODUCTION

Plaintiff, Counterclaim Defendant Luitpold Pharmaceuticals, Inc. ("Luitpold") respectfully submits this memorandum of law in support of its Motion *In Limine* No. 2 based on Federal Rule of Evidence 702 to exclude portions of testimony from Defendants, Counterclaim Plaintiffs' proposed expert witness on damages, Michele M. Riley ("Riley").

Riley was asked by Defendants, Counterclaim Plaintiffs Ed. Geistlich Söhne A.G. Für Chemische Industrie ("Geistlich") to offer an opinion on damages for Counterclaims II (Underpayment) and III (Marketing Efforts) relating to alleged breaches of the 1994 Commercial Agreement (as amended) ("Commercial Agreement"), the 1994 Bio-Oss License Agreement, and the 1998 Bio-Gide License Agreement (collectively, the "Agreements"). Riley is a Certified Public Accountant licensed in Maryland. Her opinions and bases for those opinions are contained in the Expert Report on Damages by Michelle M. Riley dated July 3, 2015 ("Riley Expert Report") (Exhibit 1 to Declaration of Martin Cunniff ("Cunniff Decl.")). After making the assumption that liability for the alleged breaches will be established (as to which subject she expresses no opinion), Riley attempted to quantify damages purportedly suffered by Geistlich.

Her opinions relating to damages for Counterclaim III (Marketing Efforts) should be excluded in their entirety as unhelpful and unreliable under F.R.E. 702 and *Daubert* and its progeny. Portions of her opinions relating to damages for Counterclaim II (Underpayment) should similarly be excluded.

**ARGUMENT**

**I.**   **RILEY'S OPINIONS RELATING TO COUNTERCLAIM III (MARKETING EFFORTS) SHOULD BE EXCLUDED**

  **A.**   **Riley's Opinion is Unreliable Because She Relies on the Same Flawed Benchmark Analysis as Geistlich's Industry Expert, Martin Dymek.**

The fundamental defect with Riley's opinion on damages is that she failed to perform a critical part of her analysis.  She did not perform any causation analysis at all to support her opinion on damages and simply made an untested and unsupported assumption that █████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Exhibit 1 to Cunniff Decl. at p. 35. Specifically, ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ████████████████████████████████████ Exhibit 1 to Cunniff Decl. at pp. 35-36. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████ Exhibit 1 to Cunniff Decl. ¶ 70.  This assumption, in other words, is a fundamental basis of her calculation – it provides the starting basis of the amounts in her calculation.

It is axiomatic that proof of causation is required to recover damages for breach of contract.  *Bausch & Lomb, Inc. v. Bressler*, 977 F.2d 720, 731 (2d Cir. 1992) ("A plaintiff seeking damages for breach of contract . . . must demonstrate that the damages were caused by and are directly traceable to the . . . breach.") (citations and internal quotation marks omitted).

Indeed, "[t]he failure to prove damages is . . . fatal to [a] plaintiff's breach of contract cause of action." *Cramer v. Spada*, 610 N.Y.S.2d 662, 664 (App. Div. 1994). Riley's failure to conduct a causation analysis that determines the amount and extent of damages dooms her testimony as unreliable under Federal Rule of Evidence 702 for two reasons: (a) improper reliance on another expert for a critical part of her damages analysis; and (b) failure to account for alternative factors that could have caused the difference in revenue growth rates. First, instead of performing her own causation analysis as to what Luitpold's sales of Geistlich products would be in the absence of the alleged breach, Riley testified that: ██████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████ Riley Tr. at 95:19-23 (Cunniff Decl. Ex. 2). She added:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████

*Id.* at 180:5-13.

Riley's reliance on Dymek makes her own testimony unreliable because Dymek himself did not perform any causation analysis. *See Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 429 (S.D.N.Y. 2009) ("expert who simply repeats the hearsay of the client who retained him, without any independent investigation or analysis, does not assist the trier of fact"); *Gary Price Studios, Inc. v. Randolph Rose Collection, Inc.*, No. 03 Civ. 969(CSH), 2006 WL 1319543, at *8 (S.D.N.Y. May 11, 2006) (expert "assumed the correctness" of the plaintiffs' statements on "core questions of fact uncritically"); *Rowe Ent'mt, Inc. v. William Morris Agency, Inc.*, No. 98CIV8272(RPP), 2003 WL 22124991, at *9 (S.D.N.Y. Sept. 15, 2003) (expert "took no steps to verify the accuracy of the data Plaintiffs provided to him"); *see also In re "Agent*

*Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985) ("If the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded."), *aff'd*, 818 F.2d 187 (2d Cir. 1987); *accord Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143, 1154-55 (N.D. Cal. 2007) ("an expert report on damages . . . may not rely on unreasonable inferences or resort to 'mere speculation or guess'").

Dymek's report states:



Expert Report of Martin J. Dymek at p. 37 (Ex. 3 to Aug. 28, 2015 Cunniff Decl. (ECF No. 332)). This is the full extent of Dymek's causation analysis. He did not perform any quantitative analysis such as regression analysis. He did not parse out the components of the revenue growth of Straumann and Nobel to determine which parts relate to sales efforts and what percentage is caused by factors such as new product launches, acquisitions, or accounting for extraordinary items. He did not even make the most basic adjustments between the revenue growth rates to eliminate the effect of new product launches and acquisitions (which significantly distinguish the two companies from Luitpold). Dymek admitted that



Dymek transcript at 111:6-23 (Ex. 1 to Aug. 28, 2015 Cunniff Decl.). But he did not make any adjustments because he ████████████████████████████████, *Id.* at 110:11-16, based on his ████████████████████████████████████████

███████████████████████████████████████████

████████ *Id.*

As discussed in more detail in Luitpold's Motion in Limine No. 1, this is not a methodology at all, let alone a reliable one – it is based "on little more than speculation, [and his] analysis lacks the 'intellectual rigor that characterizes the practice of an expert in the relevant field.'" *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 273-74 (S.D.N.Y. 2010) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Riley's abdication of her duty as an expert witness on damages to determine through her own analysis what the damages would be "but for" the alleged breach of the best efforts clause is a sufficient basis to exclude her testimony. *Gary Price Studios, Inc.*, 2006 WL 1319543, at *8 (precluding expert testimony as unhelpful because expert's "report and deposition make it plain that he assumed the correctness of Plaintiffs' statements on these core issues of fact uncritically and without subjecting them to any inquiry or corroboration, from other sources or his own experience"); *see also Scott v. City of New York*, 591 F. Supp. 2d 554, 563 (S.D.N.Y. 2008) (witness "may not testify as to unsubstantiated opinions or personal knowledge based on unidentifiable sources," precluding "common knowledge" assertions found in expert report); *CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 677-78 (S.D.N.Y. 2011) (opinion "inadmissible because Kilbourne 'based his opinion on the conclusory statements of [Graco] management, and not on his independent evaluation of the facts'").

Beyond her fundamental mistake in relying on Dymek, Riley's failure to make any attempt to identify and account for alternative factors that could have caused the difference in growth rate is a well-recognized reason to exclude expert testimony under *Daubert*. Other panels of this Court have recognized the following factors in assessing reliability under *Daubert*:

In assessing reliability, a court should consider, perhaps among other factors, (1) whether the expert's theory "can be (and has been) tested;" (2) whether the theory "has been subjected to peer review and publication;" (3) the "known or potential rate of error;" (4) whether the theory has "widespread acceptance," (5) whether an expert's opinion was developed for litigation, and (6) whether the expert has accounted adequately for obvious alternative explanations.

*Faulkner v. Nat'l Geographic Soc'y*, 576 F. Supp. 2d 609, 619 (S.D.N.Y. 2008). As the damages expert, Riley's opinion particularly fails under the sixth factor: whether the expert has accounted adequately for obvious alternative explanations.

"It is plain that one cannot determine whether something caused an observed effect without controlling for other equally plausible causes of that effect." *R.F.M.A.S., Inc.*, 748 F. Supp. 2d at 273 (expert testimony inadmissible when damages experts failed to investigate any alternative causes of the plaintiff's alleged injury, and instead relied on the superficial correlation between the defendants' alleged actions and a decline in the plaintiff's business, without ever attempting to determine that this correlation actually amounted to causation); *cf. Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 474 (E.D.N.Y. 2011) ("even though 'an expert need not rule out every potential cause in order to satisfy *Daubert*, the expert's testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant'") (quoting *Israel v. Spring Indus., Inc.*, No. 98–CV–5106, 2006 WL 3196956, at *5 (E.D.N.Y. Nov. 3, 2006)); *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 73 n.9 (S.D.N.Y. 2001) ("failure to take into account other causes . . . is also a ground for *Daubert* exclusion"); *see also Wheat v. Pfizer*, 31 F.3d 340 (5th Cir. 1994) (rejecting expert testimony where expert could not rule out other possible causes).

Here, as in *R.F.M.A.S.*, Riley ascribes 100% of the difference in revenue growth to the alleged breach and performs no analysis of alternative explanations; therefore, her testimony

fails under this factor because her analysis of what caused the decline in sales of Geistlich products "is simply inadequate to support the conclusion that [Luitpold's actions were] the cause." *R.F.M.A.S.*, 748 F. Supp. 2d at 270. As the court there noted, the plaintiff's damages experts "need not necessarily have considered every alternative theory of causation advanced by defendants in order for their testimony to be admissible; if they had failed to consider one or even several of the obvious other possible causes, this might not be fatal to their testimony." *Id.* at 273. However, as is the case with Riley, the plaintiff's experts "did not simply fail to consider every plausible alternative cause—rather, the record lacks any evidence that [they] actually investigated *any* other possible causes." *Id.* at 273-74 (failure to consider any alternative causes rendered "opinions on causation rest on an unreliable methodology")(emphasis in original).

The obvious alternate explanations that she ignored are legion. Some of the most obvious are:

- the effect of currency exchange rate fluctuations between the foreign companies used for comparison and Luitpold,

- the differences in price elasticity of demand between dental implant products (the markets Straumann and Nobel are in) and dental regenerative products (the market Geistlich products are in),

- the effect of price competition in the dental regenerative market versus the effect of price competition in the dental implant market,

- the differing effects of the 2008 recession,

- the portfolio effect between companies with numerous product lines (Straumann and Nobel) and a single product line (Geistlich products),

- the difference in business structure (manufacturers v. distributors),

- and a whole host of other factors which may have caused the difference in growth rates between the various companies.

Moreover, "there is persuasive case law from this court rejecting expert testimony on damages for failure to control properly for general market movements." *Schonfeld v. Hilliard*, 62 F. Supp. 2d 1062, 1074 (S.D.N.Y. 1999), *aff'd in part, rev'd in part*, 218 F.3d 164 (2d Cir. 2000); *cf. In re Executive Telecard Ltd. Sec. Litig.*, 979 F.Supp. 1021 (S.D.N.Y.1997) (finding an expert's methodology not reliable because he failed to conduct an event study or regression analysis to detect whether stock price declines were the result of forces other than the alleged fraud). Of course, there could be differences in opinion about the effect of these factors and assessments, but Riley's failure to consider or analyze them at all, and ascribe 0% impact to each and every one of them, makes her damages calculations unreliable.

In sum, Geistlich attempts to hide the lack of causation in a veritable "shell game" between its experts. Riley provides elaborate damages calculations but fails to perform the causation analysis that should undergird her damages estimate. Instead, she relies on Dymek who simply assumes causation based on his personal experience without the use of any quantitative methods or supporting data. This is exactly the expert opinion testimony that *Daubert* and F.R.E. 702 is designed to exclude, i.e., testimony that appears authoritative but at bottom is nothing more than guesswork and speculation.

### B. Riley's Opinion Relating to Whether Luitpold Met its Contractual Obligations is Outside the Scope of Her Expertise and Consists of Improper Factual Narrative

In her report, Riley explicitly stated, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 to

Cunniff Decl. at 28 (emphasis added). She affirmed this position in her deposition. Ex. 2 to

Cunniff Decl. at 35:24-36:2 ███████████████████████████████████████████████

██████████████████████████████████████████ Having stated that she assumed liability, Riley

simply recites six pages of factual assertions, at pp. 28-34 of her report regarding issues of

liability that are drawn from or the same as Mr. Dymek's, without offering any opinion of

analysis or conclusion.  Exhibit 1 to Cunniff Decl. ¶¶ 53, 54.  For example, Riley includes in her

report statements that ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ and that

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

*Id.*; *see also id.* ¶¶ 55-60.  She also discusses various internal emails of Luitpold personnel as

well as internal analyses of Luitpold, but she affirmatively eschewed any opinion on liability

relating to those facts.  (Ex. 2 to Cunniff Decl. at 35:24 to 36:2 ████████████████

██████████████████████████████████████████████████████████

     In the first place, Riley is a damages expert and not qualified to opine on the sufficiency

of sales and marketing efforts.  In a recent case in this district, a damages expert was precluded

from testifying about "reasonable marketing and promoting efforts for this industry [compression

sports apparel]" and whether a party "met those standards."  *Washington v. Kellwood Co*., 2015

WL 2258098 at p. 14 (S.D.N.Y. April 21, 2015).  The same logic applies here.

     While a damages expert may assume that liability will be established, she may not "act as

a vehicle for lengthy factual narrative."  *See Island Intellectual Prop. LLC v. Deutsche Bank AG*,

No. 09 CIV. 2675 KBF, 2012 WL 526722, at *2 (S.D.N.Y. Feb. 14, 2012) (citing *Highland

Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187-88 (S.D.N.Y. 2008); *In re Rezulin*

*Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004)).  An expert may opine on the ultimate issue of fact, but she "may not give testimony stating ultimate legal conclusions based on those facts."  *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *see* Fed. R. Evid. 704 advisory committee's note; *Fiataruolo v. United States*, 8 F.3d 930, 941-42 (2d Cir.1993); *United States v. Scop*, 846 F.2d 135, 140 (2d Cir.1988) ("[B]ecause [the expert's] opinions were calculated to invade the province of the court to determine the applicable law and to instruct the jury as to that law, they could not have been helpful to the jury in carrying out its legitimate functions." (internal quotations omitted)); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95 Civ. 3901, 1999 WL 946354, at *2 (S.D.N.Y. Oct. 19, 1999) .

In *Island Intellectual Property*, the court refused to allow a proposed expert to "walk the jury through a narrative," noting that

> This is a particularly important principle for the parties to grasp, since several of the proposed experts' reports contain lengthy descriptions of the documentary record. An expert may offer opinions that will help the jury understand the evidence or determine factual issues. ***He may not, however, directly transmit facts to the jury, about which he has no personal knowledge, simply because his testimony represents the easiest way to do that***.

2012 WL 526722, at *2 (emphasis added).  Indeed, "the Second Circuit . . . cautioned that experts must not cross the 'increasingly thinning line' between legitimate use of expert opinion to explain complex or esoteric subjects and 'substitution of expert opinion for factual evidence.'" *Scott*, 591 F. Supp. 2d at 563 (quoting *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008)).

"An expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through the application of specialized knowledge."  *Arista Records LLC*, 608 F. Supp. 2d at 424-25 (striking several paragraphs from expert's declaration because the

conclusions did not require specialized knowledge and were not based upon sufficient facts and data) (citing *Mejia*, 545 F.3d at 197-98).

The factual assertions by Riley merely recount the substance of various internal documents of Luitpold and other parties. This kind of testimony, therefore, is nothing more than a back-door effort to offer proof of Geistlich's theory of breach of the best efforts obligation. "Assumptions based on conclusory statements of the expert's client, rather than on the expert's independent evaluation are not reasonable." *Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*, No. 95 Civ. 8136, 2001 WL 1602976, at *4 (S.D.N.Y. Dec. 14, 2001) (collecting cases); *Arista Records LLC*, 608 F. Supp. 2d at 424-25. Riley is not qualified to opine on the sufficiency of Luitpold's marketing efforts because she is a CPA who testifies as to damages calculations and is not an expert in sales and marketing.

Accordingly, Riley should be precluded from offering testimony, such as the testimony set forth on pp. 28-34 of her report, relating to the issue of whether Luitpold breached its contractual obligations regarding best efforts; her testimony should be limited to opinions relating to the quantification of damages.

C.    **Testimony Regarding GEM 21S and Exhibits 8 and 8A to the Riley Expert Report Should be Excluded as Unreliable.**

On p. 32 of her report, Riley states that, ██████████████████████████████
████████████████████████████████████████████ Exhibit 1 to Cunniff Decl.
at p. 32. In Exhibit 8, Riley presents an "Analysis of GEM 21S and Bios Product Customers" and, in Exhibit 8A, a "Summary of Bios Product Customers Purchasing Bios Products and GEM 21S." These exhibits contain analyses of:

- the number of "Bios Product customers stopped purchasing Bios Products after the introduction of GEM 21S in 2005" (Exhibit 1 to Cunniff Decl. at 32);

- the number of "customers who purchased both Bios Products and GEM 21S products decreased their purchases of Bios Products as opposed to increasing their purchases of Bios Products" (*id.*); and

- the number of "customers [who] decreased their purchases of Bios Products" (*id.*).

This testimony should be excluded for three independent reasons. First, this analysis does not relate to her opinions on damages; rather, it relates to her *assumption* that liability exists because Luitpold breached the Agreements. She cannot testify to opinions or factual narratives in the guise of assumptions. Second, it relates to subject matter outside the scope of her expertise. Third, the analysis is riddled with errors that make it unhelpful and unreliable.

First, as discussed above, Riley, like all damages experts, has assumed liability and presented her opinions on the quantification of damages. Her analysis of the effect of GEM 21S on Luitpold's sales of Geistlich products does not relate to the quantification of damages—it relates to whether Luitpold breached the Agreements by failing to meet its contractual duties. She admitted this in her deposition:

[[Q.    And this doesn't flow in to any of the damages calculations



Ex. 2 to Cunniff Decl. at 213:7-214:25 (emphasis added).

Riley admits that this analysis is not part of her damages calculation; rather, it is

█████████████ that supports Mr. Dymek's █████████████ *Id.*  Indeed, she freely admitted that

it does not support an opinion she is giving in the case:



Ex. 2 to Cunniff Decl. at 216:9-20.  She has not set this forth in her report as an opinion;

therefore, she cannot be allowed to testify about it in the guise of an "assumption."

Second, the analysis is outside the scope of her expertise.  Riley describes her expertise

as, ███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████]  *See* Ex. 2 to Cunniff Decl. at 14:1-6.  She is not an expert in the dental regenerative

market nor is she an economist.  Ex. 2 to Cunniff Decl. at 14:20-15:10.

Her analysis supporting her ████████████ that the ██████████████████

█████████████████████████████████████ requires expertise in market

analysis that is beyond the expertise needed to calculate damages and would require expertise in

economics or the dental regenerative market.

Third, Riley's calculations are error-ridden and based on flawed methodology; therefore,

Exhibits 8 and 8A and testimony relating to them should be excluded.  *See Shatkin v. McDonnell*

*Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984) (conclusions based on flawed data and bias

were "riddled with errors" and were required to be excluded).  For example, Riley states that



███████  Riley Report at 32.  However, her calculation involves substantial multiple counting: ███████████████████  Second

Revised Rebuttal Report of Joel W. Hay ("Hay Rebuttal Report") at 16 (Cunniff Decl. Ex. 3).  If

she had not engaged in multiple counting of individual customers, she would have found ███████

███████████████  *Id*.  Riley,

moreover, counted customers who stopped making purchases as those who did not make a

purchase between April 1, 2010 to March 31, 2011.  If the entire relevant time period is used,

2005 – 2011, ████████████████████████

*Id*.

        This mistaken counting results in a fivefold inflation of the correct number.  Beyond

those simple counting errors, Riley makes no effort to ascertain whether the customers who

stopped purchasing did so because of death, retirement, or consolidation with other dental

practices.  Instead, she *assumes* (without evidence or analysis) ███████████████

██████████████  Exhibit 1 to Cunniff Decl. at 32.  Likewise, she

significantly overcounts ████████████████████

████████████████████████████████

██████████████  Ex. 3 to Cunniff Decl.at p. 17.  If she had

counted both, as she falsely represented that she did, ███████████████

████████████  *Id*. at 17.  All of these errors are material because once

corrected the data shows that GEM 21S customers were *more* likely to continue to purchase

Geistlich products than customers who did not purchase the GEM 21S product. *Id.* at 18. The data, therefore, directly contradicts her conclusion.

Conclusions not supported by the data such as these conclusions by Riley are inadmissible. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) (holding that expert opinion was unreliable because it was not supported by data and was based on assumptions); *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 319 (S.D.N.Y. 2009) (finding that expert's damages calculation based on inaccurate data and unsupported assumptions is inadmissible); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 355 (S.D.N.Y. 2003) (excluding expert's report because calculation was speculative and lacked basis in fact).

## II. PREJUDGMENT INTEREST FOR BOTH COUNTERCLAIMS IS INCORRECTLY CALCULATED.

In the Riley Expert Report, Riley attempted to calculate prejudgment interest for Geistlich's Counterclaims. *See* Exhibit 1 to Cunniff Decl. ¶¶ 38, 72. Riley, however, arbitrarily calculated prejudgment interest using a calculation taken from the Commercial Agreement for late payments that provides for simple interest at the higher of ten percent or three percentage points over the prime rate rather than using statutory prejudgment interest rate under New York law. *See id.* ¶ 45. Her opinion must be rejected because, first, the contractual provision she relies upon is limited to invoices and it is undisputed that no invoices were unpaid and, second, her opinion is contrary to New York law.

Riley relies on Section 7.04 of the Commercial Agreement as the source of her prejudgment interest calculation. *See* Exhibit 1 to Cunniff Decl. ¶ 38 n. 79. That section is expressly limited to "overdue payments" and Riley admitted ███████████████████████ ████████ *Cf.* Ex. 2 to Cunniff Decl. at 67:20-68:7. Because the contractual interest

provision applies to unpaid invoices, and there were none, the legally correct basis for prejudgment interest that controls in a diversity action in federal court is New York statutory law. *See EMI Music Mktg. v. Avatar Records, Inc.*, 364 F. Supp. 2d 337, 344 (S.D.N.Y. 2005) ("It is well settled that state law applies to an award of prejudgment interest in a diversity action in federal court.") (citing *Baker v. Dorfman*, 239 F.3d 415, 425 (2d Cir. 2000)); *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999)); *Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*, 232 F. Supp. 2d 289, 291-92 (S.D.N.Y. 2002) (same). New York statutory prejudgment interest is nine percent (9%), N.Y. C.P.L.R. § 5004, so Riley's calculation is both wrong and an overstatement based upon the rate alone. The rate, however, is not her only error.

Riley's opinion also improperly unilaterally presupposes the date as of which interest should run, but this invades the role the jury. New York law provides that prejudgment interest is to be computed "from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." N.Y. C.P.L.R. § 5001(a), (b). Riley █████████ that the underpayment claims ██████████ ██████████████████████ *See* Ex. 2 to Cunniff Decl. at 193:6-194:11. But, it is the role of the jury to "fix the date from which interest is to be computed." *Cf. Mallis v. Bankers Trust Co.*, 717 F.2d 683, 694 (2d Cir. 1983); *see also* N.Y. C.P.L.R. § 5001, Practice Commentary C5001:5, Fixing Dates and Making Computations ("Subdivision (c) requires that the trier of the facts, whether court, referee, or jury, fix the dates relevant to a computation of interest."). She provides no basis for choosing June 30, that is, it has not been established whether or when a cause of action accrues for the "true-up" or reconciliation between the amounts Luitpold paid – timely and in full – for the invoices issued by Geistlich based upon confirmed purchase orders, on the one hand, versus the percentage of Net Sales that Geistlich claims was due. The invoices

required 'payment in full" within a stated period (usually 60 days), and there is no date the invoices were paid in full and on time. So Riley's prejudgment interest calculation fails to establish the date when a reconciliation should have occurred, what amount it would have established as owing, and when that amount would be due. *See* Luitpold Motion for Summary Judgment on Counts II and III of the Counterclaim, dated August 24, 2015 (ECF No. 309). There is no evidence by any percipient witness to a negotiation between the parties that there was agreement between the parties on the need to conduct a "true-up," when it would occur, when a payment would be due, and when interest would start to accrue. *Id.* The only evidence Geistlich has relied upon as to an agreement about the timing of an alleged "true-up" obligation was in the Second Declaration of Dr. Peter Geistlich (ECF No. 166) given post-discovery, in connection with the 2013 motion for summary judgment on Geistlich's counterclaims, that is inadmissible because he has died and his declaration does not satisfy any of the unavailable witness hearsay exceptions of F.R.E. 803. Furthermore, Riley's "true-up" calculation only works in one direction - it does not credit Luitpold for the massive amount of unpaid interest owed by Geistlich for all of its unpaid "true-up" payment obligations that accrued from the inception of the contract until the liability flipped the other way.

Riley, therefore, inappropriately relies on the contractual rate for late invoice payments as the applicable rate for calculating prejudgment interest, which is governed by New York statute, as well as supplants the trier of fact in fixing the date from which prejudgment interest accrues. Accordingly, Riley should be precluded from offering testimony on prejudgment interest. *Shatkin*, 727 F.2d at 208 (affirming district court's decision to exclude proposed testimony of plaintiff's economic expert concerning the extent of loss because the opinion was based on a number of unrealistic assumptions). *See also Boucher*, 73 F.3d at 21 (finding that district court

erred in permitting an expert to testify concerning earnings capacity when his conclusions were based upon unrealistic and speculative assumptions).

Riley should not be permitted to opine on prejudgment interest, having failed to timely disclose an admissible opinion thereon. She should be barred from any opinion because the jury does not need her to tell them any calculation. New York law provides for interest at 9% on a simple interest basis. *See* N.Y. C.P.L.R. § 5004; *see also EMI Music Mktg.*, 364 F. Supp. 2d at 345 (calculating prejudgment interest at 9% per annum in a breach of contract action); *City of Binghamton v. Serafini*, 778 N.Y.S.2d 547 (App. Div. 2004) (same); *Donovan v. Dairy Farmers of Am., Inc.*, 53 F. Supp. 2d 194, 197 (N.D.N.Y. 1999) ("Prejudgment interest [in New York] is calculated on a simple interest basis from the earliest ascertainable date on which its cause of action existed."); *Patane v. Romeo*, 652 N.Y.S.2d 142 (App. Div. 1997) (prejudgment interest calculated as a "simple annual rate"); *Long Playing Sessions, Inc. v. Deluxe Labs., Inc.*, 514 N.Y.S.2d 737 (App. Div. 1987) (same). All the jury needs to determine is the date when it would accrue (as to which there is no admissible evidence cited in Riley's opinion and no admissible evidence at all in light of the absence of a true-up provision in the Commercial Agreement or in any relevant agreement between the parties and because Dr. Geistlich's Second Declaration is inadmissible).

Dated: New York, New York  
        September 2, 2015

Respectfully submitted,

ARENT FOX LLP

By:     _____  
        Hunter T. Carter (HC-1844)  
        Mark A. Bloom (MB-6082)  
        Jennifer L. Bougher (JB-6245)  
        1675 Broadway  
        New York, NY 10019  
        Telephone: (212) 484-3946  
        Fax: (212) 484-3990  
        hunter.carter@arentfox.com  
        mark.bloom@arentfox.com  
        jennifer.bougher@arentfox.com

        Martin Cunniff (admitted *pro hac vice*)  
        Arent Fox LLP  
        1717 K Street, NW  
        Washington, DC 20006-5344  
        Telephone: (202) 857-6000  
        Fax: (202) 857-6395  
        martin.cunniff@arentfox.com