**DORSEY & WHITNEY LLP**

Christopher G. Karagheuzoff (CK-1122)
51 West 52nd Street
New York, NY 10019
Telephone: 212-415-9200

-and-

Joseph W. Hammell (admitted *pro hac vice*)
Shari L.J. Aberle (admitted *pro hac vice*)
David Y. Trevor (admitted *pro hac vice*)
Erin Davenport (admitted *pro hac vice*)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: 612-340-2600

*Attorneys for Geistlich*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- X

Luitpold Pharmaceuticals, Inc.,

      Plaintiff, Counterclaim
      Defendant,

-v-

Ed. Geistlich Söhne A.G. Für Chemische
Industrie, and OSTEOMEDICAL LTD,

      Defendants, Counterclaim
      Plaintiffs.

--------------------------------------------------------- X

Index No. 11-cv-00681 (KBF)
ECF Case

**GEISTLICH'S MEMORANDUM IN OPPOSITION TO**
**LUITPOLD'S MOTION *IN LIMINE* NUMBER 2 TO EXCLUDE**
**EVIDENCE FROM DAMAGES EXPERT MICHELE M. RILEY**

September 9, 2015

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................1

II. RILEY IS QUALIFIED TO OPINE ON GEISTLICH'S DAMAGES ...........................2

III. ARGUMENT..................................................................................4

    A. Riley's Opinions Regarding Geistlich's Best Efforts Damages Are Properly Supported and Admissible. ........................................................4

        1. Geistlich Need Only Establish Its Damages with Reasonable Certainty; Luitpold Must Bear Any Uncertainty in the Amount Due..........................................................................................4

        2. Riley Uses a Regularly Accepted Method to Compute Geistlich's Best Efforts Damages, and Luitpold's Criticisms Go to Weight, Not Admissibility..............................................................................5

    B. Riley Does Not Intend to Offer Factual Narrative at Trial. .....................................13

    C. Riley Does Not Intend to Opine on GEM 21S Sales, Unless Necessary...............14

    D. Geistlich's Prejudgment Interest Is Correctly Calculated and Should Be Awarded.......................................................................................15

IV. CONCLUSION................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.,*
   611 F. Supp. 1223 (E.D.N.Y. 1985) ....................................................................................................10

*Apple, Inc. v. Motorola, Inc.,*
   757 F.3d 1286 (Fed. Cir. 2014), *partly overruled in respect not relevant here*
   *by Williamson v. Citrix Online, LLC,* 2015 WL 3687459 (Fed. Cir.) (en banc
   in part)............................................................................................................................................11

*Arista Records LLC v. Lime Grp., LLC,*
   2011 WL 1674796 (S.D.N.Y.)........................................................................................................11

*Arista Records LLC v. Usenet.com, Inc.,*
   608 F. Supp. 2d 409 (S.D.N.Y. 2009)............................................................................................10

*Autowest, Inc. v. Peugeot, Inc.,*
   434 F.2d 556 (2d Cir. 1970)..............................................................................................................6

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,*
   2000 WL 1694321 (S.D.N.Y.)........................................................................................................11

*Bigelow v. RKO Radio Pictures, Inc.,*
   327 U.S. 251, 260, (1946)..................................................................................................................7

*Bloor v. Falstaff Brewing Corp.,*
   454 F. Supp. 258 (S.D.N.Y. 1978) *aff'd,* 601 F.2d 609 (2d Cir. 1979) ............................6, 7, 8

*Boucher v. U.S. Suzuki Motor Corp.,*
   73 F.3d 18 (2d Cir. 1996) ................................................................................................................18

*Boyce v. Soundview Tech. Grp., Inc.,*
   464 F.3d 376 (2d Cir.2006)........................................................................................................4, 19

*Carnegie Melon Univ. v. Marvell Technology Grp., Ltd.,*
   2015 WL 4639309 (Fed. Cir. Aug. 4, 2015)..................................................................................11

*Celebrity Cruises Inc. v. Essef Corp.,*
   434 F. Supp. 2d 169 (S.D.N.Y. 2006)............................................................................................12

*Celebrity Cruises Inc. v. Essef Corp.,*
   478 F. Supp. 2d 440 (S.D.N.Y. 2007)............................................................................................13

*Celebrity Cruises Inc. v. Essef Corp.,*
   530 F. Supp. 2d 532 (S.D.N.Y. 2008)..................................................................................7, 8, 20

*CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.,*
    815 F. Supp. 2d 673 (S.D.N.Y. 2011) ................................................................10

*Citibank, N.A. v. Liebowitz,*
    487 N.Y.S.2d 368 (App. Div. 1985) ....................................................................16

*City of Binghamton v. Serafini,*
    778 N.Y.S.2d 547 (App. Div. 2004) ....................................................................16

*Colon ex rel. Molina v. BIC USA, Inc.,*
    199 F. Supp. 2d 53 (S.D.N.Y. 2001) ..................................................................12

*Contemporary Mission, Inc. v. Famous Music Corp.,*
    557 F.2d 918 (2d Cir. 1977) ..................................................................................6

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993) ............................................................................................13

*Deutsch v. Novartis Pharm. Corp.,*
    768 F. Supp. 2d 420, (E.D.N.Y. 2011) ..............................................................12

*Donovan v. Dairy Farmers of America, Inc.,*
    53 F. Supp. 2d 194 (N.D.N.Y 1999) ..................................................................16

*EMI Music Mktg. v. Avatar Records, Inc.,*
    364 F. Supp. 2d 337 (S.D.N.Y. 2005) ................................................................16

*Entis v. Atl. Wire & Cable Corp.,*
    335 F.2d 759 (2d Cir.1964) ..................................................................................5

*Faulkner v. Nat'l Geographic Soc'y,*
    576 F. Supp. 2d 609 (S.D.N.Y. 2008) ................................................................12

*Formax Inc. v. Alkar-Rapidpak-MP Equip.,*
    2014 WL 057116 (E.D. Wis.) ............................................................................11

*Freund v. Washington Square Press, Inc.,*
    34 N.Y.2d 379 (1974) ............................................................................................5

*Gary Price Studios, Inc. v. Randolph Rose Collection, Inc.,*
    2006 WL 1319543 (S.D.N.Y.) ............................................................................10

*Indu Craft, Inc. v. Bank of Baroda,*
    47 F.3d 490 (2d Cir. 1995) ....................................................................................5

*Long Playing Sessions, Inc. v. Deluxe Laboratories, Inc.,*
    514 N.Y.S.2d 737 (App. Div. 1987) ..................................................................16

*Mallis v. Bankers Trust Co.*,
    717 F.2d 683 (2d Cir. 1983)........................................................................18

*In re Nw. Airlines Corp. Antitrust Litig.*,
    197 F. Supp. 2d 908 (E.D. Mich. 2002)....................................................13

*In re Zyprexa Prods. Liab. Litig.*,
    489 F. Supp. 2d 230 (E.D.N.Y. 2007) .........................................................8

*Oscar Gruss & Son, Inc. v. Hollander*,
    337 F.3d 186 (2d Cir. 2003)..........................................................................4

*Patane v. Romeo*,
    652 N.Y.S.2d 142 (App. Div. 1997)...........................................................16

*Perma Research & Development v. Singer Co.*,
    542 F.2d 111 (2d Cir. 1976), *cert. denied*, 429 U.S. 987 (1976)................6

*Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*,
    511 F. Supp. 2d 324 (E.D.N.Y. 2007) .........................................................9

*R.F.M.A.S., Inc. v. So*,
    748 F. Supp. 2d 244 (S.D.N.Y. 2010)...........................................2, 8, 9, 10

*Rowe Entm't., Inc. v. William Morris Agency, Inc.*,
    2003 WL 22124991 (S.D.N.Y.)..................................................................10

*Schonfeld v. Hilliard*,
    62 F. Supp. 2d 1062 (S.D.N.Y. 1999), *aff'd in part, rev'd in part*, 218 F.3d
    164 (2d Cir. 2000)........................................................................................12

*Schwimmer* v. *Allstate Ins. Co.*,
    176 F.3d 648 (2d Cir. 1999)........................................................................16

*Shatkin v. McDonnell Douglas Corp.*,
    727 F.2d 202 (2d Cir. 1984)........................................................................18

*Stanford Square, LLC v. Nomura Asset Capital Corp.*,
    232 F. Supp. 2d 289 (S.D.N.Y. 2002)........................................................16

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
    487 F.3d 89 (2d Cir. 2007)............................................................................5

*Valloni v. Crisona*,
    566 N.Y.S.2d 372 (App. Div. 1991).............................................................16

*W.L. Hailey & Co. v. County of Niagara*,
    388 F.2d 746 (2d Cir.1967)............................................................................5

*Wakeman v. Wheeler & Wilson Mfg. Co.,*
    101 N.Y. 205 (1886) ............................................................................5

*Washington v. Kellwood Co.,*
    2015 WL 2258098 (S.D.N.Y.).................................................7, 8, 9, 13

*Williamson v. Citrix Online, LLC,*
    2015 WL 3687459 at *6 (Fed. Cir.) (en banc in part) ............................10

**Other Authorities**

N.Y. C.P.L.R. § 5001 ............................................................................18

N.Y. C.P.L.R. § 5004 ............................................................................16

# I. INTRODUCTION

Geistlich's damages expert, Michele Riley, calculates the damages Geistlich suffered due to Luitpold's failure to exercise best efforts by comparing its sales with the sales growth rates experienced by comparable companies, Straumann and Nobel Biocare. This is a commonly accepted method for calculating these damages. Consequently, the courts in this jurisdiction regularly admit this expert testimony, even over objections that the companies selected are not sufficiently similar. Luitpold ignores every single case that is directly on point, relying instead on inapposite statements of the law that are unconnected to the actual facts or Riley's actual analysis. None of Luitpold's arguments have merit, and the overwhelming authority makes clear that Riley's quantification of best efforts damages is appropriate and will help the jury determine the amount of damages required to put Geistlich in the position it would have been but for Luitpold's breach. Luitpold can challenge Riley's underlying assumptions and calculations through vigorous cross-examination; however, it is not entitled to exclude her testimony.

Luitpold also argues that Riley should be precluded from testifying about her quantification of prejudgment interest, which she calculates based on the parties' contractually-agreed interest rate. Luitpold ignores well-settled New Nork law that, where parties agree on what interest rate applies, that is the rate that governs; not New York's statutory interest rate. Luitpold also argues that Riley's calculation is flawed, but in doing so, fails to even say how she should have calculated it differently. In the end, Luitpold's criticisms (at best) go to weight, not admissibility.

Finally, Luitpold raises other arguments about Riley's anticipated testimony, but Luitpold misapprehends Riley's anticipated testimony and, consequently, the objections it raises are without merit.

## II.  RILEY IS QUALIFIED TO OPINE ON GEISTLICH'S DAMAGES

Riley is well-qualified to opine on the damages Geistlich suffered as a result of

Luitpold's breach of its contractual payment obligation (Count II or "underpayment claim") and

best efforts obligations (Count III or "best efforts claim").  Riley's expertise is ███████

████████████████████████ Declaration of Erin P. Davenport in Opp. to

Luitpold's Mot. *In Limine* to Exclude Testimony of Michele M. Riley ("Davenport Decl.") Ex. 1

at 14:4-6.  She has an MBA, is a licensed Certified Public Accountant, a Certified Fraud

Examiner, and is also certified in Financial Forensics.  Davenport Decl. Ex. 2, Ex. A  Riley has

offered her expert opinion on damages in more than 40 civil cases in the past five years and has

testified in court about fifteen times. *See Id.*, Ex. 1 at 15:11-18.  Every court Riley has appeared

before has accepted her as a damages expert. *Id.*, Exs. 1 at 15:19-21; *id.*, Ex. 2 ¶ 2. *See*

*R.F.M.A.S., Inc. v. So.*, 748 F. Supp. 2d 244, 254 (S.D.N.Y. 2010) (finding that "Michele Riley is

a licensed CPA and has been qualified as a damages expert in many federal cases").

Riley was retained to offer her expert opinion regarding the damages on Geistlich's

underpayment and best efforts claims.  Luitpold does not challenge Riley's qualifications to

opine on Geistlich's damages. *See generally* Luitpold's Motion *in Limine* No. 2 to Exclude

Evidence from Geistlich's Damages Expert Michele M. Riley (*hereinafter* "Luitpold's Br.").

As a damages expert, Riley does not "determine" liability; that is a question for the jury.

Instead, she assumes ████████████████████████. Davenport Decl. Ex. 2 ¶ 8.

Assuming ███████████████████████████████████████████

████████████████, she calculated the damages due to ████████████

████████████████████.[1] *Id.* ¶¶ 41-51 & Ex. 1.  Luitpold does not

---

[1]  Riley calculates the underpayment damages using both a 4- and 6-year limitations period,
pending the Court's determination of whether the UCC or the common law applies.  She also

challenge these calculations, other than to argue that Riley's use of the parties' contractually-agreed interest rate is improper. *See* Luitpold's Br. at 15-18.

With respect to Geistlich's damages for Luitpold's failure to use its best efforts to market and sell the Bios products, Riley assumed ███████████████████████████

███████████████████████████████████████████████████████

████████████████████ Davenport Decl. Ex. 2 ¶¶ 53-61. Riley then quantified Geistlich's damages using a methodology regularly accepted by courts in this and other jurisdictions. Specifically, Riley projected ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ by two industry comparators—Nobel Biocare and Straumann. *Id.* ¶ 61; *see id.*, Ex. 1 at 150:14-22. Using Nobel and Straumann as the appropriate yardsticks for comparison, Riley assumed that Luitpold could have grown ████████████████████████████

████████████████████████████████████████████████████

████████████████ , which was the average combined growth rate for Straumann and Nobel during these periods. *Id.*, Ex. 1 ¶ 63. Applying these assumed growth rates, Riley calculated Geistlich's best efforts damages to be not less than ████████████████████

████████ under the License Agreements and at least ███████████████████ under the Commercial Agreement.[2] *Id.* ¶¶ 62-72; *Id.*, Ex. 3.

Riley based her damages analysis and related opinions on her education and experience, her discussion with industry expert Martin Dymek, as well as her review of evidence produced in

---

calculates damages for ████████████████████████████████████ , as further described in Riley's Report at ¶ 52. *See* Davenport Decl. Ex. 2.

[2]   Riley similarly calculates the best efforts damages under two different scenarios for the jury's consideration. Davenport Decl., Ex. 2 ¶ 64.

discovery and publicly available information. *Id.*, Ex. 2 ¶ 5. She evaluated the reliability of the

data underlying her opinions and whether those opinions were supported by the evidence, and

calculated Geistlich's damages using accepted techniques. *Id.* ¶ 6. Her 40-page report, with

more than 50 pages of underlying exhibits, clearly demonstrate her methodology.

## III.   ARGUMENT

### A.   Riley's Opinions Regarding Geistlich's Best Efforts Damages Are Properly Supported and Admissible.

Luitpold claims Riley's calculation of Geistlich's damages caused by Luitpold's failure

to exercise best efforts is unreliable. In so arguing, Luitpold ignores not only the most basic

tenets of New York damages law, but it also ignores cases from this jurisdiction analyzing (and

ultimately rejecting) the very same type of challenges to best efforts damages that Luitpold

advances here. That is undoubtedly because Luitpold has no good response. Courts in this

jurisdiction regularly admit such expert testimony, finding that challenges raised (including those

going to the comparability of the benchmark companies) go to weight, not admissibility.

#### 1.   Geistlich Need Only Establish Its Damages with Reasonable Certainty; Luitpold Must Bear Any Uncertainty in the Amount Due.

New York damages law is clear: if the jury concludes that Luitpold breached its

contractual obligation to provide best efforts sales and marketing support for the Bios products,

Geistlich is entitled to be made whole, and it need not prove its damages to a mathematical

certainty. *See Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 384-85 (2d Cir. 2006)

("[D]amages for breach of contract should put the plaintiff in the same economic position he

would have occupied had the breaching party performed the contract.") (quoting *Oscar Gruss &*

*Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)).

To establish its damages, Geistlich "need only show a stable foundation for a reasonable

estimate of the damage incurred as a result of the breach." *Tractebel Energy Mktg., Inc. v. AEP*

*Power Mktg., Inc.*, 487 F.3d 89, 110-11 (2d Cir. 2007) (quoting *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 383, (1974)) (internal quotation marks omitted) "Such an estimate necessarily requires some improvisation, and the party who has caused the loss may not insist on theoretical perfection." *Entis v. Atl. Wire & Cable Corp.*, 335 F.2d 759, 763 (2d Cir.1964). To determine the sufficiency of Geistlich's damages evidence, the Court should be "guided by the principle that if a plaintiff has shown it more likely than not that it has suffered damages, the amount of damages need only be proved with reasonable certainty." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 496 (2d Cir. 1995) (citing *W.L. Hailey & Co. v. Cnty. of Niagara*, 388 F.2d 746, 753 (2d Cir. 1967) (collecting New York cases)).

Moreover, New York law makes clear that a "person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain." *Id.* (quoting *Wakeman v. Wheeler & Wilson Mfg. Co.*, 101 N.Y. 205, 209 (1886)). Rather, "[t]he wrongdoer must shoulder the burden of the uncertainty regarding the amount of damages." *Id.* (citing *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d Cir. 1977).

Luitpold's challenges to the reliability of Riley's opinions fall far short when measured against these basic tenets of New York damages law.

**2. Riley Uses a Regularly Accepted Method to Compute Geistlich's Best Efforts Damages, and Luitpold's Criticisms Go to Weight, Not Admissibility.**

Not only does Luitpold avoid discussing these basic principles, it completely ignores the case law in this jurisdiction showing that the courts regularly allow damages to be calculated using the very type of benchmark (or yardstick) analysis that Riley employs. These cases also reveal that, while defendants regularly oppose such damage calculations by claiming the

comparators were improperly selected (as Luitpold does here), the courts reject those critiques because they go to the weight—and not the admissibility—of the expert's opinions.

As the Second Circuit has stated, "the measure of the damage [for failure to use best efforts] is the amount necessary to put the injured party in the exact position [it] would have been if the contract had not been breached." *Perma Research & Dev. v. Singer Co.*, 542 F.2d 111, 116 (2d Cir. 1976) (affirming damages awarded for breach of best efforts obligations and rejecting claim that award was unreasonable or unsupportable, even though product was never sold and damages were calculated based on hypothetical sales), *cert. denied*, 429 U.S. 987 (1976).

The court in *Bloor v. Falstaff Brewing Corp.*, 454 F. Supp. 258, 277 (S.D.N.Y. 1978) *aff'd*, 601 F.2d 609 (2d Cir. 1979), thus concluded that damages for a distributor's breach of its obligation to use best efforts to sell plaintiff's product was "established by reference to the sales achieved by 'comparable' [companies]" during the relevant time period. *Id.* at 277. As the court noted, "[t]his method of computing damages has often been employed by the courts." *Id.* (discussing *Autowest, Inc. v. Peugeot, Inc.*, 434 F.2d 556 (2d Cir. 1970) (in action for wrongful termination of auto franchise, plaintiff proved damages by comparing Volvo sales, which had increased, with Peugeot sales, which had a much smaller increase); *Contemporary Mission*, 557 F.2d at 927-28 (in action for failure to use reasonable efforts to promote song that reached No. 61 on Hit Parade, court approved method of comparison showing that 51% of songs reaching No. 61 went on to reach No. 20 and achieve greater sales); *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 260 (1946) (Supreme Court approved damage computation based on comparison of plaintiff's theatre's profits, which defendant had deprived of first-run motion pictures, with profits of comparably sized theatre that had access to those films).

Applying this methodology, the plaintiff's expert in *Bloor* calculated best efforts damages by comparing defendant's beer sales against volume of beer sales by comparable brewers. *Bloor*, 454 F. Supp. at 277-78. The defendant argued—like Luitpold here—that the comparables selected were improper, but the court summarily rejected defendant's objections "as lacking in merit." *Id.* at 278-79. The court in that bench trial then calculated plaintiff's damages using the sales data for two products that both the plaintiff's and defendant's experts considered comparable, concluding they were the appropriate comparators against which to benchmark what the plaintiff's "performance would have been but for [defendant's] breach" of its best efforts obligation. *Id.* at 279.

In *Celebrity Cruises Inc. v. Essef Corp.*, 530 F. Supp. 2d 532, 539 (S.D.N.Y. 2008), the defendant moved for judgment as a matter of law on the grounds that the jury's $15 million damages award was not supported by the evidence. In particular, the defendant claimed that plaintiff's expert's yardstick analysis, which compared plaintiff's profitability with the profitability of comparable cruise lines, was not valid because (according to the defendant) the companies used were "too dissimilar." *Id.* But the court disagreed and denied the defendant's motion, noting the defendant had an opportunity to challenge the analysis at trial and the evidence was sufficient to support the jury's verdict. *Id.*

*Washington v. Kellwood Co.*, 2015 WL 2258098 (S.D.N.Y.), is another case making this same point, and was decided very recently. Luitpold actually cites this case for the proposition that a damages expert cannot opine on whether a party met reasonable marketing efforts (something Riley does not intend to do), and yet completely ignores the rest of the court's extensive analysis and holding that the damages expert *could* properly calculate and opine on damages using an industry comparator. *See* Luitpold's Br. at 9.

The plaintiff in *Washington* sued defendant for breach of its obligation to use reasonable efforts to market and sell its products pursuant to an exclusive license agreement. 2015 WL 2258098, at *3. Its damages expert—a CPA with a wide range of experience in accounting, finance, business valuation, and damage calculations—assessed plaintiff's losses using a "Yardstick Analysis" whereby he utilized a market leader in the industry "as a comparator for purposes of opining on the potential for [the plaintiff's brand's] success had defendant performed adequately under the License Agreement." *Id.* at *4.

The defendant argued, among other things, that the comparison company was not an appropriate comparator and, even if it was, the expert's analysis was flawed and unreliable. *See id.* at *16. The court rejected the defendant's criticisms, stating that "[w]hile defendant and its expert may take issue with the ultimate conclusions that can reasonably be drawn from the evidence, we leave it to their no-doubt robust efforts at trial 'to call[] into question the weight that the jury should accord [the expert's] testimony." *Id.* at *17 (quoting *R.F.M.A.S., Inc.*, 748 F. Supp. 2d at 269). Because the expert's analysis was sufficiently reliable, the court concluded that any "intervention with respect to the Yardstick Analysis at this stage would be inappropriate. Indeed, '[a]ny more rigorous approach would deny the jury's constitutional role." *Id.* (quoting *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007)).

Like the defendants in *Bloor*, *Celebrity Cruises*, and *Washington*, Luitpold seeks to exclude Riley's opinions on best efforts damages because Luitpold claims her benchmarking (or yardstick) analysis is unreliable. Luitpold advances a variety of contentions to support that proposition, but none have merit.

First, Luitpold complains that Riley did not perform a "causation analysis." Luitpold's Br. at 2-3. But Riley is a damages expert and, as such, she assumes ██████████████████

8

████████████ find support in the record evidence and the opinions of industry expert

Martin Dymek). Davenport Decl. Ex. 2 ¶ 53; *see id.*, Ex. 1 at 14:14-19. Riley is thus simply

"quantifying a loss based on underlying assumptions the validity of which *are for the fact-finder*

*to assess.*" *Washington*, 2015 WL 2258098 at *12 (emphasis added). It is entirely appropriate to

permit Riley to testify to her quantification of damages based on comparisons with Straumann

and Nobel. *See id.* (holding that expert may testify to quantification of comparison "as a means

of valuing plaintiffs' case"); *see also Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*, 511 F. Supp.

2d 324, 334 (E.D.N.Y. 2007) (rejecting defendant's argument that because plaintiff's damages

expert did not analyze whether defendant's failure to use best efforts caused product's lack of

market success, evidence of damages was insufficient; expert testified causation was not an issue

for him as an economist). Notably, Luitpold fails to cite a single case excluding a *damages*

expert for failing to conduct a *causation* analysis—an issue plainly for the jury.[3]

  Luitpold next claims that Riley cannot rely on industry expert Martin Dymek, because

Luitpold claims Dymek failed to undertake a causation analysis. Lutipold's Br. at 3-5. Luitpold

never even advanced this argument in its *Daubert* motion seeking to strike Dymek and, at any

rate, Dymek's industry-specific opinions about what constitutes best efforts in the DSSM and

Luitpold's failure to meet those standards based on his extensive review of the record evidence

---

[3] Luitpold cites *R.F.M.A.S., Inc. v. So.*, 748 F. Supp. 2d 244 (S.D.N.Y. 2010), but the court
there did not exclude a damages expert for failing to analyze causation. To the contrary, the
court excluded a damages expert's attempt to opine on causation because the expert was
unqualified and employed an unreliable methodology. *Id.* at 268-74. The court expressly noted
that "[d]etermining what motivated a particular person or entity is generally not an appropriate
subject matter for expert testimony." *Id.* at 268. The *R.F.M.A.S.* court ultimately excluded the
entirety of the damages expert's opinions, but only after detailing numerous shortcomings,
including (among other things) consideration of only a minimal data set selected by plaintiff's
counsel, shifting opinions when faced with additional data, failure to undertake any independent
investigation of the facts, and failure to distinguish liability between different defendants or
separate harms flowing from different causes of action. *See id.* at 257-77. Riley's analysis is
subject to none of these attacks.

are appropriate and admissible. *See generally* Geistlich Mem. Opp'n to Luitpold's Mot. to Exclude Dymek. Dymek's opinions will help the jury determine facts in issue, but the jury will ultimately decide whether Luitpold breached its best efforts obligation and, if so, whether that breach caused Geistlich damage. Here, too, Luitpold fails to cite case law on point.[4]

      Moreover, Luitpold's claim that Riley cannot rely on another expert is simply wrong. It is well-settled that for "areas outside [a damages expert's] expertise, such as details unique to [a particular] industry… [the expert may], indeed must, rely upon… other experts having such industry-specific experience." *Carnegie Melon Univ. v. Marvell Tech. Grp., Ltd.*, 2015 WL 4639309, at *16 (Fed. Cir.) (citing *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside their field"), *partly overruled in respect not relevant here by Williamson v. Citrix Online, LLC*, 2015 WL 3687459, at *6 (Fed. Cir.) (en banc in part)). It is therefore "perfectly reasonable for a finance and damages expert to adopt the conclusions of other experts. Whether those conclusions are sound can be explored at trial through cross-examination and

---

[4]    Rather than providing support, the cases Luitpold cites are so far afield they instead show how much Luitpold is stretching to make these arguments. *See, e.g.*, *CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 677-78 (S.D.N.Y. 2011) (excluding expert who relied wholly on conclusory statements of party that retained him, even though independent evidence contradicted those statements); *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 428-29 (S.D.N.Y. 2009) (excluding industry expert who relied wholesale on "misleading and erroneous" statements of *his client*); *Gary Price Studios, Inc. v. Randolph Rose Collection, Inc.*, 2006 WL 1319543, at *8-9 (S.D.N.Y.) (excluding expert's "analysis" that merely "parrot[ed] the testimony that [plaintiff was] expected to give at the trial"); *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 2003 WL 22124991, at *9 (S.D.N.Y.) (excluding damages expert because his sampling methodology was no methodology at all; the "sample" was inherently biased because only those contracts that "looked interesting" to counsel were selected); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1246-47 (E.D.N.Y. 1985) (excluding medical expert who used a checklist prepared by plaintiff's counsel and relied exclusively on plaintiff's statements about cause of illnesses without reference to prior medical records or applicable studies). None of the facts requiring exclusion of the experts in these cases are present here.

other expert testimony." *Formax Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, 2014 WL 3057116, at *2 (E.D. Wis.); *See also Arista Records LLC* v. *Lime Grp., LLC*, 2011 WL 1674796, at *10 (S.D.N.Y.) (noting "courts have accepted expert testimony from financial and economic analysis even when those witnesses lack 'industry specific' knowledge"); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 2000 WL 1694321, at *2 (S.D.N.Y.) (stating that expert's reliance on opinions of other experts "is permissible").

Finally, Luitpold argues that Riley's damage analysis fails to account for differences between Luitpold and Straumann and Nobel. Luitpold's Br. at 5-8. Tellingly, although Luitpold previously argued that Straumann and Nobel were "manifestly non-comparable companies" in its motion to strike Dymek (*see* Dkt. #331, Luitpold's Mem. in Supp. of Mot. *In Limine* No. 1 to Exclude Testimony of Martin Dymek at 15, 20-21), Luitpold abandons that argument here, arguing only that Riley should have accounted for differences between the three companies.[5] And while Luitpold tries to cast this as a continuation of its "causation" argument, as noted above, causation is an issue for the jury to determine.

What Luitpold is really arguing is that there may be differences between Straumann and Nobel that Riley should have somehow adjusted for in her damage analysis, including allegedly different product lines, markets and business structures, and different economic experiences in

---

[5]   Luitpold's abandonment of that argument is unsurprising. As Geistlich pointed out in its motion to strike Hay's rebuttal opinions, Hay himself relied on Straumann and Nobel Biocare in his own damage calculations because it is his ██████████████████████████████████ ██████████████████████████████████████████████████████████████████ Davenport Decl. Ex. 4 at 17 n.59. Hay also reviewed ████████████████████████████ ███████████████████████████████████████████ *Id.* Luitpold also views these companies ███████████████ *See* Dkt. #344, Geistlich's Mem. in Supp. of Mot. *In Limine* to Exclude the Testimony and Rebuttal Reports of Joel W. Hay at 9, n.5, and evidence cited therein.

the industry. Luitpold's Br. at 7. Based on these differences (whether actual or theoretical),

Luitpold speculates it might not have been able to realize sales growth commensurate with Nobel

or Straumann. But by using Straumann and Nobel, many of the factors Luitpold cites are

adequately normalized. For example, Luidpold, Nobel, and Straumann sell high-end premium

DSSM products to the ███████████████████████████████████████████

██████████████████████████████████████ Davenport Decl., Ex. 5

¶¶ 30-31. Such similarities properly account for macro effects (such as the 2008 recession), as

well as micro industry-specific effects (such as the impact of competition in the DSSM).[6]

Moreover, Luitpold does not even identify whether any of the issues it lists would actually have

an impact on Riley's quantification of damages and, if so, whether any would cause her analysis

to be more or less conservative.[7]

     Luitpold's list of factors it claims Riley should have considered goes to the weight to be

afforded to Riley's analysis, not its admissibility. "The selection of comparators will seldom

approach the 'Utopian ideal' of identifying the perfect clone." *Celebrity Cruises Inc. v. Essef

Corp.*, 434 F. Supp. 2d 169, 189-90 (S.D.N.Y. 2006) (quotation omitted) (denying motion to

---

[6] Luitpold's reliance on *Schonfeld v. Hilliard*, 62 F. Supp. 2d 1062 (S.D.N.Y. 1999), *aff'd in part, rev'd in part*, 218 F.3d 164 (2d Cir. 2000), to argue for exclusion is misplaced. In *Schonfeld*, the expert "casually compared" a start-up cable company's potential subscriber base to CNN, PBS, Cartoon Network, and others with a record of public acceptance. *Id.* at 1075. There is no "casual comparison" at issue here. Luitpold considers Straumann and Nobel to be comparable; its damages expert, Hay, considers them to be comparable; and Geistlich's industry expert agrees they are appropriate comparators.

[7] The other cases Luitpold cites are similarly unpersuasive. *See, e.g., Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 474 (E.D.N.Y. 2011) (excluding medical expert who employed faulty differential diagnosis methodology); *Faulkner v. Nat'l Geographic Soc'y*, 576 F. Supp. 2d 609, 619 (S.D.N.Y. 2008) (excluding damages expert who assumed a damages multiplier not grounded in reality but as part his effort "to establish a *new industry standard*."); *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 73 n.9 (S.D.N.Y. 2001) ("lighter expert" not qualified to testify about safer-design options for mini-lighters because he was not qualified to testify about the psychological effects of different colored lighters).

exclude expert's opinion calculating damages by comparing profitability between plaintiff and other cruise lines and, in so doing, rejecting argument that comparators were inappropriate); *see also In re Nw. Airlines Corp. Antitrust Litig.*, 197 F. Supp. 2d 908, 928-29 (E.D. Mich. 2002) (denying *Daubert* motion to exclude benchmarks, noting benchmarks need only be "somewhat comparable," not "wholly identical" because "certainty generally is unattainable").

In short, while the evidence and assumptions underlying Ms. Riley's damages analysis may, in Luitpold's view "be thin, questionable, or self-servingly selective, [the Court's] role as gatekeeper is not to divest [Luitpold] of the task of challenging the weight of such evidence before the trier of fact." *Washington*, 2015 WL 2258098, at *18; *Celebrity Cruises, Inc. v. Essef Corp.*, 478 F. Supp. 2d 440, 452 (S.D.N.Y. 2007) (holding that any flaws in expert's selection of comparators to calculate damages "do not render [the expert's] analysis inadmissible, they [only] diminish its value in establishing lost profits."). If Luitpold believes that Riley's quantification of the damages Geistlich suffered as a result of Luitpold's failure to use best efforts is unreliable or flawed, it will have an opportunity to inform the jury of its concerns through "vigorous cross-examination" and the "presentation of contrary evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). Consistent with the courts' holdings in *Bloor*, *Celebrity Cruises*, and *Washington*, this Court should deny Luitpold's motion to exclude Riley's opinions quantifying Geistlich's best efforts damages.

**B.** **Riley Does Not Intend to Offer Factual Narrative at Trial.**

Luitpold criticizes Riley in one breath for failing to perform a causation analysis, and in the next faults her for describing some of the evidence she reviewed to support her assumption that Luitpold failed to use its best efforts to market the Bios products. Luitpold's Br. at 2, 8-11. Luitpold argues Riley cannot offer a narrative of the underlying evidence demonstrating Luitpold's many shortcomings with respect to its best efforts obligations.

Geistlich agrees, and has similarly moved to exclude the same type of improper factual narrative Luitpold seeks to offer through its experts. *See* Dkt. #344 at 5, 10-14; Dkt. #347, Geistlich's Mem. in Supp. Mot. to Exclude Reports and Testimony of Joseph Floyd at 7, 9-10. Riley will not be providing factual narrative of the evidence of Luitpold's failure to use best efforts. Rather, Geistlich will put this evidence in through the other witnesses. By the time Riley testifies, this evidence will already be before the jury. Riley does not intend to repeat this evidence, other than to the extent that reference to particular evidence will facilitate her explanation of Geistlich's damages for the jury (or as required to respond to cross-examination). In short, this is a non-issue.

### C.  Riley Does Not Intend to Opine on GEM 21S Sales, Unless Necessary.

On October 1, 2012, Luitpold produced the Rebuttal Expert Report of Joel W. Hay, Ph.D. Davenport Decl. Ex. 6. In response to industry expert Martin Dymek's opinion that Luitpold's efforts to market and sell █████████████████████████████████ █████ Luitpold put forth Hay, its damages expert, to speculate that █████████████ ██████████████████████████████████ because ████████████ ████████████████████████████████████ ████████████ *Id.* ¶¶ 90, 93. Luitpold had never produced in discovery the "██████████ ██████ on which Hay relied even though it was plainly responsive to several requests; Geistlich only received this evidence *after* Hay submitted his rebuttal report, just two months before trial was then scheduled to begin.

In response to Luitpold's late-production of this ████ data (couched within a speculative damages expert rebuttal analysis), Geistlich's then-damages expert, Richard Gering, similarly analyzed the data in a compressed time frame to create the summaries now set forth as Exhibits 8 and 8a to Riley's Report. Davenport Decl. Ex. 2. But as Geistlich explained in its *Daubert*

motion to exclude Hay's rebuttal opinions on this topic, Luitpold's —is not a proper subject for expert testimony. *See* Dkt. #344 at 11-14. Indeed, as further explained in Geistlich's *Daubert* motion, Hay's "analysis" of Lutipold's ███████████████████████████ *Id.*

Yet Luitpold, the party who first sought to put forth a discussion of its sales data via its damages expert, now seeks to exclude Riley from discussing the very same data set. As this Court has previously stated, "what is good for the goose is good for the gander." Presumably in making this argument Luitpold now agrees that Hay likewise cannot speak about this alleged sales data. If Luitpold wishes to put this data before the jury and argue about what it believes the data shows, it must attempt to do so through its percipient witnesses. It is not entitled to clothe its argument with an appearance of credibility that it does not deserve by channeling the argument through its damages expert. Geistlich similarly agrees that Riley will not testify about Luitpold's sales data, unless it becomes necessary to do so in rebuttal.[8]

### D. Riley Properly Quantifies Prejudgment Interest Based on the Parties' Agreement; Luitpold's Objections Go Only To Weight, Not Admissibility.

The parties' here contractually agreed that interest on overdue payments would be the higher of ten percent or three percentage points over the prime rate. Riley thus calculates the prejudgment interest on Geistlich's best efforts and underpayment damages in accordance with the parties' agreement from the start of the respective damages periods through September 30,

---

[8] Riley reviewed the Luitpold ████ data; however, she had less than a month from the time the Court approved Geistlich's request to substitute a new expert to the time her own report was due. Riley and her team sought to verify and, where appropriate, revise those parts of Gering's damages analysis with which Riley did not agree. Riley identified some further corrections to her calculations after her July 3, 2015 report was completed. *See* Davenport Decl. Ex. 3. She has since identified ███████████ in Exhibits 8 and 8a. But as discussed above, she does not intend to opine on this factual data, and therefore has not submitted corrections to those numbers.

2015, ████████ Davenport Decl. Ex. 2 ¶ 38. As Riley notes, ████████



████████ *Id.* Riley's approach, ████████, is a much more conservative approach.

Luitpold argues that Riley should not be permitted to opine on the applicable interest calculation, arguing that New York's statutory prejudgment interest rate should apply. Luitpold's Br. at 15. But Luitpold's cases merely set out general rules regarding prejudgment interest; none are cases where the parties had a contractually-agreed upon interest rate.[9]

"It is well settled that when a contract provides for interest to be paid at a specific rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in [N.Y. C.P.L.R § 5004], governs until payment of the principal or until the contract is merged in a judgment." *Citibank, N.A. v. Liebowitz*, 487 N.Y.S.2d 368, 369 (App. Div 1985); *see also Valloni v. Crisona*, 566 N.Y.S.2d 372, 373-74 (App. Div. 1991) ("[W]e find that the computation of interest on damages awarded to the plaintiff was erroneous. It is well settled that where, as here, the parties' agreement provides that interest shall be paid at a specified rate until the principal is paid, the rate of interest set forth in the agreement (rather than the statutory rate) governs until the principal is paid or the agreement is merged into a judgment.").

---

[9] *See, e.g., Schwimmer* v. *Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999) (personal injury case that involved no contractual provision setting an interest rate); *EMI Music Mktg. v. Avatar Records, Inc.*, 364 F. Supp. 337 (S.D.N.Y. 2005) (explaining that state law applies to the award of prejudgment interest; no contractual interest rate involved); *Stanford Square, LLC v. Nomura Asset Capital Corp.*, 232 F. Supp. 2d 289, 291-92 (S.D.N.Y. 2002) (explaining that New York law applies to the award of prejudgment interest; no contractual interest rate involved); *Donovan v. Dairy Farmers of Am., Inc.*, 53 F. Supp. 2d 194, 197 (N.D.N.Y 1999) (no contractual interest rate involved); *City of Binghamton v. Serafini*, 778 N.Y.S.2d 547 (App. Div. 2004) (same); *Patane v. Romeo*, 652 N.Y.S.2d 142 (App. Div. 1997) (same); *Long Playing Sessions, Inc. v. Deluxe Laboratories, Inc.*, 514 N.Y.S.2d 737 (App. Div. 1987) (same).

Luitpold tries to run from the parties' mutually agreed interest rate, arguing the contractual interest provision applies only to "unpaid invoices" and, because there were none, it simply does not apply. Luitpold's Br. at 15-16. But this is an unduly restrictive reading of the parties' agreements.[10] The parties agreed that "interest on overdue payments *contemplated in* ARTICLE VI and this ARTICLE VII will be charged at the rate of ten percent (10%) per annum or three percentage points (3%) over the prime rate, whichever is higher." Compl., Ex. 1 ¶ 7.04 (emphasis added). Nothing in this section or the other sections cited limits interest to "unpaid invoices." *See id.* Articles VI (Consideration) and VII (Purchase Price and Terms of Payment); *see also id.,* Ex. 2 Articles IV (License Fees) and V (Royalties, Interest and Terms of Payment)); *Id.,* Ex. 6 Articles IV (License Fees) and V (Royalties, Interest and Terms of Payment). Geistlich certainly "contemplated" that the payments it would receive from Luitpold would be made pursuant to the terms of the parties' Agreement, and would be based on sales made pursuant to a best efforts level of support. In the face of the parties' Agreement and well settled New York law that contractual rates govern the prejudgment interest analysis, Luitpold's insistence on statutory interest fails.

Luitpold raises other objections to Riley's interest calculations, but none warrant exclusion. First, Luitpold accuses Riley of having "no basis" for choosing June 30 as the appropriate date for interest accrual, but as Riley explained, she selected the June 30 accrual date

Davenport Decl. Ex. 1 at 193:6-194:11. Riley explained that, in considering the comparison of

*See*

---

[10] At best, Luitpold merely raises a factual issue for the jury to decide regarding the meaning of the relevant contractual provisions.

*id.* (emphasis added). Far from being speculative or baseless, as Luitpold accuses, Riley made a reasoned assumption based on her expertise and the evidence. Even New York's statutory interest provision contemplates flexibility in setting the date from which to compute prejudgment interest. *See* N.Y. C.P.L.R. § 5001 ("Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."). Luitpold can challenge Riley's assumption through cross examination and presentation of contrary evidence, but Luitpold's critique fails to provide a basis for exclusion.

Luitpold further argues that, in setting the date from which prejudgment interest is to be computed, Riley "invades the role of the jury." Luitpold's Br. at 16. Luitpold cites *Mallis v. Bankers Trust Co.*, 717 F.2d 683 (2d Cir. 1983), for support, but its reliance is misplaced. *Mallis* deals with the question of waiver, holding that a party's "failure to pursue [its] request for prejudgment interest during the trial or even to demand such interest in [its] complaint does not amount to a waiver of [its] right to interest," explaining that the judge may, in such cases, "fix the date from which interest is to be computed." *Id.* at 693-94. The Second Circuit merely held that plaintiffs were *entitled to* prejudgment interest, but it provided no analysis of *how* the court should determine the interest accrual date.[11]

---

[11] Luitpold's reliance on *Shatkin* and *Boucher* is similarly misplaced. *See* Luitpold's Br. at 17-18. In *Shatkin*, the expert was excluded for making "assumptions and assertions" which "were so unrealistic and contradictory as to suggest bad faith." *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984). The expert in *Boucher* was excluded because its assumptions about future lost earnings capacity was inherently uncertain and speculative. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). Those are not the facts here.

In the end, the jury will determine the amount of damages Geistlich suffered as a result of Luitpold's failures to pay the contract price and exercise best efforts. Luitpold implicitly agrees that, if damages are awarded, Geistlich is entitled to recover interest. New York law requires that any damages awarded place Geistlich "in the same economic position [it] would have occupied had [Luitpold] performed the contract." *See Boyce*, 464 F.3d at 384–85. Riley's calculation, based on the parties' mutually agreed interest rate, will help the jury determine how much interest should apply and will best facilitate the jury's ability to come up with a damages figure intended to place Geistlich in the position it would have been but for Luitpold's breaches. *Cf. Celebrity Cruises*, 530 F. Supp. 2d at 532 (noting that "[t]he rate of interest to be applied lies in the discretion of the district court. The court should exercise that discretion with the goal of making the plaintiff whole.") (citations omitted).

## IV.    CONCLUSION

For the foregoing reasons, Luitpold's motion to exclude Riley's testimony regarding Geistlich's best efforts damages calculation and regarding the contractually-agreed prejudgment interest calculation should be denied.

Dated:   Minneapolis, Minnesota
September _8_ , 2015

DORSEY & WHITNEY LLP

By: _Joseph W. Hammell_

(Joseph W. Hammell (admitted *pro hac vice*)
   hammell.joseph@dorsey.com
Shari L. J. Aberle (admitted *pro hac vice*)
   aberle.shari@dorsey.com
David Y. Trevor (admitted *pro hac vice*)
   trevor.david@dorsey.com
Erin P. Davenport (admitted *pro hac vice*)
   davenport.erin@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  612-340-2600
Facsimile: 612-340-2868

Christopher G. Karagheuzoff
   karaghenzoff.christopher@dorsey.com
51 West 52nd Street
New York, NY 10019
Telephone:  212-415-9200
Facsimile:  212-953-7201

*Attorneys for Geistlich*