Hunter T. Carter (HC-1844)
Martin Cunniff (admitted *pro hac vice*)
Mark A. Bloom (MB-6082)
Jennifer L. Bougher (JB-6245)
Arent Fox LLP
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3946
Fax: (212) 484-3990
carter.hunter@arentfox.com
cunniff.martin@arentfox.com
bloom.mark@arentfox.com
bougher.jennifer@arentfox.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

− − − − − − − − − − − − − − − − − − − − − − − − − − −   x

| | | |
|---|---|---|
| Luitpold Pharmaceuticals, Inc., | : | Case No. 11-cv-0681 (KBF) (THK) |
| Plaintiff, Counterclaim Defendant, | : | ECF Case |
| v. | : | Judge Katherine B. Forrest |
| Ed. Geistlich Söhne A.G. Für Chemische Industrie, and OSTEOMEDICAL LTD. | : | |
| | : | |
| Defendants, Counterclaim Plaintiffs. | | |

− − − − − − − − − − − − − − − − − − − − − − − − − − −   x

**LUITPOLD PHARMACEUTICALS, INC.'S
PROPOSED JURY INSTRUCTIONS**

ARENT FOX LLP
Attorneys for Plaintiff
1675 Broadway
New York, New York 10019
P: 212-484-3900
Hunter T. Carter, Esq.
Mark A. Bloom, Esq.
Jennifer L. Bougher, Esq.

1050 Connecticut Avenue, NW
Washington, DC 20036-5339
Tel: 202.857.6000
Martin Cunniff, Esq.

# TABLE OF CONTENTS

**I.   GENERAL INSTRUCTIONS – INTRODUCTORY**  **3**

    1.   Opening Instructions  3
    2.   Order of Trial  6
    3.   Claims and Defenses  7
    4.   Role of the Jury  8

**II.   GENERAL INSTRUCTIONS - EVIDENTIARY**  **10**

    1.   Preponderance of the Evidence  10
    2.   What Is and Is Not Evidence  12
    3.   Direct and Circumstantial Evidence  14
    4.   Depositions  16
    5.   Witness Credibility  17
    6.   Discrepancies in Testimony  19
    7.   Impeachment by Prior Inconsistent Statements  20
    8.   Falsus in Uno  21
    9.   Expert Witnesses  22
    10.   Striking Evidence  23
    11.   Foreign Language Testimony  24

**III.   SPECIFIC INSTRUCTIONS - LIABILITY**  **25**

    1.   Breach of Contract – Generally  25
    3.   Modification of Contract  27
    4.   Breach of Contract – Underpayment  28
    5.   Breach of Contract – "Best Efforts" In Executing Business Plan  29
    6.   Trademark - Definition  31
    7.   Trademark Ownership – Exclusive License  32
    8.   Breach of Contract – Exclusive Trademark License  33
    9.   Affirmative Defense - General Instruction  34
    10.   Breach of Contract – License Agreement  **Error! Bookmark not defined.**
    11.   Luitpold's Affirmative Defense of Waiver  35
    12.   Luitpold's Affirmative Defense of Laches and Delay  37

**IV.   SPECIFIC INSTRUCTIONS – DAMAGES**  **38**

    1.   Damages  38
    2.   Proximate Cause  39
    3.   Compensatory Damages  40
    4.   Lost Profits  42
    5.   Calculation of Lost Profit Damages  43
    6.   Prejudgment Interest  44
    7.   Mitigation of Damages  45

**V.   GENERAL INSTRUCTIONS – DELIBERATION**  **46**

    1.   Duty To Deliberate / Unanimous Verdict  46
    2.   Deadlock Charge: Reaching Agreement  48
    3.   Selection of Foreperson  49
    4.   Return of Verdict  50

## I.     GENERAL INSTRUCTIONS – INTRODUCTORY

### 1.     Opening Instructions

We are about to begin the trial of the case you heard about during the jury selection.  Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

During the trial you will hear me use a few terms that you may not have heard before.  Let me briefly explain some of the most common ones to you.  The party who sues is called the plaintiff.  In this case, the plaintiffs are Ed. Geistlich Sohne A.G. Fur Chemische Industrie, or "Geistlich," and Osteomedical Ltd., or "Osteomedical."  For purposes of convenience, and unless I state otherwise, when I refer to "Geistlich," "plaintiffs" or "plaintiff," I am referring to both Geistlich and Osteomedical collectively.

The party being sued is called the defendant.  In this action, the defendant is Luitpold Pharmaceuticals, Inc. which I will refer to as "Luitpold," or by its operating division involved in this case, "Osteohealth."  Geistlich is seeking to recover damages from Luitpold for injuries that Geistlich claims to have experienced as a result of Luitpold's conduct.  In addition, Luitpold has filed what are known as "counterclaims," for which Luitpold seeks to recover damages from Geistlic for injuries that the Luitpold claims to have experienced as a result of Geistlich's conduct.

You will sometimes hear me refer to "counsel."  "Counsel" is another way of saying "lawyer" or "attorney."  I will sometimes refer to myself as the "Court."  When I "sustain" an objection, I am excluding that evidence from this trial for a good reason.  When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.

3

When I say "admitted into evidence" or "received into evidence," I mean that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

By your verdict, you will decide disputed issues of fact. I will decide all questions of law that arise during the trial.  Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply. Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented.  During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else.  In addition, you should not permit anyone to discuss the case in your presence.  You should avoid reading any news articles that might be published about the case, or doing any independent research – either on the Internet or otherwise – about the case.  You should also avoid watching or listening to any commentary on the trial, whether on television, radio comments or the Internet.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers.  It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible.  You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections.  If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question.  You should not infer or

conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other.  I do not favor one side or the other.

The lawyers are not allowed to speak with you during this case.  When you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure.  Sometimes, you may be excused from the courtroom during these discussions.  I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

**Authority:**  Adapted from 3 Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions § 101.01 (6 ed. 2012).

**2.    Order of Trial**

The case will proceed as follows.

After the opening statements, Geistlich will present evidence in support of its claims.  Luitpold's lawyer may then cross-examine Geistlich's witnesses.  At the conclusion of Geistlich's case, Luitpold will introduce evidence and Geistlich's lawyer may cross-examine Luitpold's witnesses.  At the conclusion of Luitpold's case, Geistlich may then present rebuttal evidence.  Luitpold then might provide further rebuttal to any additional evidence that Geistlich has offered.

After the evidence is presented, the parties' lawyers will respectively make closing arguments explaining what they believe the evidence has shown.  What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict.  You will then decide the case.

**Authority**: Adapted from 3 Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions § 101.02 (6th ed. 2012).

### 3.      Claims and Defenses

The positions of the parties may be summarized as follows:

Geistlich and Luitpold entered into a series of agreements with each other. Geistlich now claims Luitpold breached those agreements. The agreements at issue are called the Bio-Oss Commercial Agreement, the Bio-Oss License Agreement, and the Bio-Gide License Agreement. Pursuant to these agreements, Luitpold obtained the exclusive rights to build a market for, and to sell and market, Geistlich's dental products "Bio-Oss" and "Bio-Gide" in the territories of North America, Mexico, and Japan. The agreements at issue were originally signed in 1994. They were later amended in 1996, 1998, and again in 2008.

Geistlich contends that Luitpold breached the agreements at issue in two respects. First, by not paying enough to Geistlich for the "purchase price" for the Bio-Oss and Bio-Gide products. Second, by failing to exercise its "best efforts" to continue execution of the Business Plan referenced in the Bio-Oss Commercial Agreement.

Luitpold denies that it breached the contracts at issue and asserts that it fully complied with all of its obligations under the contract. Luitpold further asserts that since 1994 it has paid Geistlich whatever amounts that Geistlich invoiced in full and timely manner, and that Geistlich, having accepted those payments, should not now be permitted to claim that the amounts Luitpold paid were insufficient under the agreements at issue.

In addition, Luitpold has also asserted counterclaims against Geistlich, contending that Geistlich breached the Agreements in question by using certain trademarks that were licensed exclusively to Luitpold in Luitpold's territory during the term of the license.

**Authority:** Adapted from 3 Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions § 101.01 (6 ed. 2012).

### 4. Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers say in their opening statements, in their summations, in their objections, or in their questions is not evidence. Nor is what I may say evidence. In this connection, you should bear in mind that a question put to a witness is never evidence. It is only the answer that is evidence. But you may not consider any answer that I directed you to disregard or that I direct be stricken from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I will make during the trial are not any indication of my views of what your decision should be as to whether or not either side has proven its case.

I also ask you to draw no inference if I ask questions of certain witnesses. Any questions I may ask of a witness are intended to clarify or to expedite matters, and are not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may be more credible than any other witnesses. You should understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice to any party.

**Authority**: Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 71-3

## II.    GENERAL INSTRUCTIONS - EVIDENTIARY

### 1.    Preponderance of the Evidence

The party with the burden of proof on any given issue has the burden of proving every disputed element of its claim to you by a preponderance of the evidence.  If you conclude that the party bearing the burden of proof has failed to establish its claim by a preponderance of the evidence, you must decide against it on the issue you are considering.

What does a "preponderance of evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means "the greater weight of the evidence."  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties and that it is equally probable that one side is right as it is that the other side is right, then you must decide that issue against the party having the burden of proof.  That is because the party bearing this burden must prove more than simple equality of evidence.  It must prove the element at issue by a preponderance of the evidence.  On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof -- that what the party claims is more likely true than not true -- then that element will have been proved by a preponderance of evidence.

10

Some of you may have heard of proof beyond a reasonable doubt, which is the standard of proof in a criminal trial.  That requirement does not apply to a civil case such as this one and you should put it out of your mind.

**Authority**: Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 73-2

### 2.     What Is and Is Not Evidence

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, and stipulations.

By contrast, the question of a lawyer is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer on cross-examination may incorporate into a question a statement that assumes certain facts to be true, and may ask the witness whether that statement is true.  If the witness denies the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony was received for a limited purpose – such as for the purpose of assessing a witness' credibility – you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they say to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

To constitute evidence, exhibits must be received in evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements that I may make concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you will hear and the exhibits you will see.

**Authority**: Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶71-4

### 3.    Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in reaching your verdict.  One type of evidence is direct evidence.  "Direct evidence" is when a witness testifies about something he knows by virtue of his own senses – something he has seen, felt, touched, or heard.  Direct evidence may also be in the form of a document presented as an exhibit where the fact to be proved is that the document exists or that the document is in a certain form or condition.  "Circumstantial evidence" is evidence that tends to prove a disputed fact by proof of other facts.  There is a simple example of circumstantial evidence.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella that was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence.  The law makes no distinction between direct evidence and circumstantial evidence.  It simply requires that your verdict must be based on a preponderance of all the evidence presented.

You should use common sense in weighing the circumstantial evidence and consider the evidence in light of your own observations in life.  In our lives, we often look at one fact and conclude from it that another fact exists.  In law we call this

14

"inference."  A jury is allowed to make reasonable inferences.  Any inference you make

must be reasonable and must be based on the evidence in the case.

**Authority**: Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 74-2; 3 Fed. Jury Prac. & Instr. § 101:01 (6th ed.).

### 4. Depositions

Some of the testimony you will hear will be in the form of depositions that have been received in evidence.  A deposition is simply a procedure where the attorneys for one side may question a witness or an adversary party under oath before a court stenographer prior to trial.  This is part of the pretrial discovery, and each side is entitled to take depositions.  You should consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

**Authority**: Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 74-14.

5.      **Witness Credibility**

As a juror, you will be required to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness' testimony.

In determining what the truth is, you must decide how believable each witness is in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.  Everything a witness says or does on the witness stand counts in your determination.  You should consider such things as how the witness impressed you; whether he appeared to be frank, forthright and candid, or evasive and edgy as if hiding something; how the witness appeared; and what his demeanor was -- that is, his behavior, manner and appearance -- while testifying.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness of his testimony, its consistency or lack of consistency, and its corroboration or lack of corroboration with other credible testimony.

In other words, in evaluating a witness' credibility, you should consider his or her demeanor, testimony and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment and your own life experience.

17

**Authority**:  Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 76-1.

### 6.      Discrepancies in Testimony

You may hear discrepancies in the testimony of certain witnesses, and counsel may argue that such discrepancies are a reason for you to reject the testimony of those witnesses.

Discrepancies in a witness' testimony or between his or her testimony and the testimony of others may be a basis to disbelieve a witness' testimony. However, such discrepancies do not necessarily mean that the witness' entire testimony should be discredited. Whether a discrepancy pertains to a fact of importance or only to a trivial detail also should be considered in weighing its significance. But a willful falsehood always is a matter of importance and should be considered seriously.

**Authority**:  Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 76-4.

### 7.      Impeachment by Prior Inconsistent Statements

You may hear evidence that at some earlier time some witnesses have said or done something which counsel argues is inconsistent with the witnesses' trial testimony. You may also hear the attorneys argue inconsistencies between a witness's deposition testimony and his or her trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement is placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness' testimony. It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

**Authority**:  Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 76-5.

**8.      Falsus in Uno**

If you find that any witness has deliberately testified falsely as to any material

issue in this case, you may disregard all or whatever part you choose of that witness's

testimony.

**Authority**:  Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 76-
8; Fed. Jury Prac. & Instr. § 105:04.

9.      **Expert Witnesses**

In this case, certain witnesses will be expressing their opinions about matters that are at issue.  A witness may be permitted to provide an opinion on those matters about which he or she has special knowledge, skill, experience and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allow the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

**Authority**: Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 76-9.

### 10.    Striking Evidence

I may order that certain information or evidence be stricken from the record and I am instructing you that you must disregard that information or testimony.  That means that when you are deciding the case, you must not consider the stricken information or testimony in any way.

**Authority**:  Adapted from 2 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 2.9, 3-21.

**11.     Foreign Language Testimony**

Certain testimony, either live or from a video recording, may be in German.  The evidence you are to consider is only that provided through the official court translators.  Although some of you may know and understand German, it is important that all jurors consider the same evidence.  So you must base your decision on the evidence presented in the official English translation.  You must disregard any different meaning.

**Authority**: Adapted from 2 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶¶ 2.7, 2.12, 3-23, and 9-29.

### III.    SPECIFIC INSTRUCTIONS - LIABILITY

### 1.    Breach of Contract – Generally

A contract, generally speaking, is a promise or set of promises made either orally or in a document or series of documents, the breach of which the law provides a remedy for or the performance of which the law recognizes as a duty.  A "breach of contract" is a failure by a party to a contract to keep those promises that results in damage being caused to the other party (or parties) to the contract.

With respect to their breach of contract claims, the parties must prove four elements by a preponderance of the evidence.  These are that:

(i) a contract exists between the parties;

(ii) the complaining party performed the contract;

(iii) the other party failed to perform, or "breached" the contract; and

(iv) the result was damage to the complaining party.

In determining what rights or obligations the parties had under the agreements at issue, you must first look to the language of those agreements themselves.  The words and phrases contained in the agreements are to be given their plain and ordinary meaning.

When determining how the parties intended that the language in the agreements at issue be interpreted, keep in mind that it is not a party's individual secret or unexpressed intent, but the parties' objective mutual intent that is controlling.  The objective intent of the parties is determined first by the language of the written agreements, but also by considering the relationship of the parties, what they said and what they did, their course of conduct throughout their business relationship, the reasonable expectations of the parties, the business purpose to be served by their agreement, and any other surrounding circumstances.  Intent may also be determined by circumstantial evidence, such as the

25

party's internal communications, minutes of internal meetings or meetings of the board of directors, and communications with non-parties.  Be mindful, however, that a party's secret or unexpressed intent that is inconsistent with the language of the agreements or course of dealing between the parties has no bearing.  Only the mutual objective intent of the parties as indicated by the parties' words and actions may be considered.

**Authority**: Adapted from Fed. Jury Prac. & Instr. § 126:03 and accompanying notes; N.Y. Pattern Jury Instr. - Civil § 4:1, cmt. p. 686.

### 3.     Modification of Contract

Under New York law, a contract may be modified by a writing that is signed by the party against whom enforcement of the change is sought or by that party's agent. Even when a contract provides that modifications must be in writing and signed, however, New York will enforce oral modifications where there has been (i) partial performance, or (2) reliance, but only where the subsequent performance or reliance is unequivocally referable to the oral modification.

**Authority**:  New York Pattern Jury Instructions § 4:1;  N.Y. Gen. Oblig. Law § 15-301 (1); *Am. Int'l Tel., Inc. v. Mony Travel Servs., Inc*., No. 99 Civ. 11581 (CM), 2001 WL 209918, at *4 (S.D.N.Y. Feb. 23, 2001).

4.        **Breach of Contract – Underpayment**

In this case, Geistlich claims that Luitpold breached the Bio-Oss Commercial Agreement by failing to pay for the Bio-Oss and Bio-Gide products using the "Net Sales" formula of Section 7.01 of the Bio-Oss Commercial Agreement.

To prevail on its breach of contract claim for underpayment, Geistlich must prove by a preponderance of the evidence that (i) Geistlich performed its obligations under the Bio-Oss Commercial Agreement; (ii) the Bio-Oss Commercial Agreement required that the "Net Sales" formula – and not any other price contained in any subsequent written agreement – be paid for Bio-Oss and Bio-Gide products; (iii) Luitpold failed to pay Geistlich in accordance with the "Net Sales" formula; and (iv) Luitpold's failure to pay in accordance with the "Net Sales" formula caused specific damage to Geistlich.

**Authority**:  Adapted from New York Pattern Jury Instructions § 4:1 at 640.

5.        **Breach of Contract – "Best Efforts" In Executing Business Plan**

Geistlich claims that Luitpold breached Section 2.02 of the Bio-Oss Commercial

Agreement, which refers to Luitpold's obligation to use its "best efforts" to continue

execution of the Business Plan attached to the Bio-Oss Commercial Agreement.

To prevail on this claim, Geistlich must prove by a preponderance of the evidence

that (i) that Geistlich performed its obligations under the Bio-Oss Commercial

Agreement; (ii) that the Bio-Oss Commercial Agreement required that Luitpold exercise

its "best efforts" to continue execution of the Business Plan; (iii) that Luitpold failed to

do so; and (iv) that Luitpold's failure to do so caused specific damage to Geistlich.

It is the language of the Agreements at issue that should define what Luitpold's

obligations were.  Under New York law, however, a clause imposing a "best efforts"

marketing obligation does not automatically create a duty for the distributor to

exclusively distribute that product.  Thus, in the absence of a clause expressly requiring

Luitpold not to carry competitive products, you should not infer that Luitpold owed a

duty of exclusivity to Geistlich.

Again, it is the language of the Agreement that controls here.  Thus, if you find

that the Bio-Oss Commercial Agreement's Business Plan contains a clear set of

guidelines against which to measure whether Luitpold fulfilled its obligations, then you

should apply those guidelines in determining whether Luitpold breached Section 2.02 of

the Bio-Oss Commercial Agreement.  You may not employ any other standard for

measuring Luitpold's "best efforts" to continue execution of the Business Plan other than

what is clearly set forth in Section 2.02 of the Bio-Oss Commercial Agreement.  Thus,

any expert opinion testimony that you may have heard about an industry standard for

determining what Luitpold's "best efforts" to continue execution of the Business Plan

should have been is only relevant to your determination if you find that the industry

standard was the standard that was embodied in Section 2.02 of the Bio-Oss Commercial

Agreement.

**Authority**:   Adapted from New York Pattern Jury Instructions § 4:1 at 640; *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 516 (S.D.N.Y. 2011) (quoting *Mocca Lounge, Inc. Misak*, 94 A.D.2d 761, 763 (N.Y. App. Div. 1983)); *Ashokan Water Servs. Inc. v. New Start, LLC*, 807 N.Y.S.2d 550, 556 (N.Y. Cir. Ct. 2006); and *Bray Int'l, Inc. v. Computer Assocs. Int'l, Inc.*, CIV.A. H-02-98, 2005 WL 2405924 (S.D. Tex. Sept. 29, 2005); *Polyglycoat Corp v. C.P.C. Distribs., Inc.,* 534 F.Supp. 200, 203 (SDNY 1982); *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 99-cv-12409, 2002 WL 31749396, * 15; *Van Valkenburgh, Nooger & Neville v. Hayden Publ. Co.*, 30 N.Y.2d 34, 45, 330 N.Y.S.2d 329 (1972).

### 6.      Trademark - Definition

A trademark is a word, a name, a symbol, a device, or a combination of them indicating the source of goods or services. The *[owner] [assignee] [licensee]* of a trademark has the right to exclude others from using that trademark subject to certain defenses.

**Authority:**  Adapted from Fed. Jury Prac. & Instr. § 159:41 and accompanying notes.

### 7.      Trademark Ownership – Exclusive License

The owner of a trademark may enter into an agreement that permits another person to use the trademark. This type of agreement is called a license, and the person permitted to use the trademark is called a licensee.

The relationship between the trademark owner-licensor and the licensee can be either exclusive or nonexclusive.  If exclusive, the license exclusivity is typically for a defined territory.  That is to say, an exclusive license allows the licensee it to exclude others from the defined territory.  If the licensor has an existing exclusive license agreement with a first licensee, any subsequent license will be considered void.  By contrast, a nonexclusive permits competition with the licensee in the defined territory.

In this case, Luitpold was an exclusive licensee of Geistlich's trademarks for Bio-Oss and its related products, including Bio-Gide, Bio-Oss Collagen, and Bio-Tape, within the territory of the United States.

**Authority:**  Adapted from Fed. Jury Prac. & Instr. § 159:48 and accompanying notes. *See also Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co*., 477 F.3d 583, 586 (8th Cir. 2007) (exclusive license agreement for the licensee to use the trademark owner's trademark in the production, marketing, and sale of sport bags)*.  San Juan Products, Inc. v. San Juan Pools of Kansas, Inc*., 849 F.2d 468, 474, 7 U.S.P.Q.2d 1230 (10th Cir. 1988); *Upper Deck Authenticated, Ltd. v. CPG Direc*t, 971 F. Supp. 1337, 1347 (S.D. Cal. 1997*); Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co*., 339 F. Supp. 2d 944, 960 (W.D. Mich. 2004); *Auto-Chlor System of Minnesota, Inc. v. Johnson Diverse*y, 328 F.Supp. 2d 980, 1019, 54 U.C.C. Rep. Serv. 2d 443 (D. Minn. 2004).

8.        **Breach of Contract – Exclusive Trademark License**

In this case, Luitpold counterclaims that Geistlich breached the Bio-Oss and Bio-Gide License Agreements by advertising products called "Geistlich Bio-Oss" and "Geistlich Bio-Gide" in both United States-accessible websites and in trade journals distributed in the United States.

To prevail on its counterclaim for breach of the exclusive license, Luitpold must prove by a preponderance of the evidence that (i) Luitpold performed its obligations under the Bio-Oss and Bio-Gide License Agreements; (ii) that the Bio-Oss and Bio-Gide License Agreements gave Luitpold an exclusive license to use the Bio-Oss and Bio-Gide marks in the United States; (iii) that Geistlich used the Bio-Oss and Bio-Gide marks in the United States while the Bio-Oss and Bio-Gide License Agreements were in force; and (iv) that Geistlich's use of the Bio-Oss and Bio-Gide marks caused damage to Luitpold.

**Authority**:  Adapted from New York Pattern Jury Instructions § 4:1 at 640.

### 9.     Affirmative Defense - General Instruction

Luitpold has asserted affirmative defenses against Geistlich's claims of breach of contract in this case.  An affirmative defense is a fact or circumstance that legally excuses the party claiming the defense from being liable to the other party, even if the other party meets its burden of proof on its claim.  The party asserting the affirmative defense bears the burden of proving the defense by a preponderance of the evidence.

If you find that Geistlich has sustained its burden of proof on any of its claims of breach of contract against Luitpold, then you should proceed to consider Luitpold's affirmative defenses.  The burden is then on Luitpold to establish its affirmative defenses.

**Authority**: Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 73-1.

### 10. Luitpold's Affirmative Defense of Waiver

In this case, Luitpold asserts the affirmative defense of "waiver" against Geistlich's claims of breach of contract.

A party to a contract may waive the other party's obligation to perform some requirement under the contract, in which case the other party has no obligation to perform the waived requirement. A waiver occurs when a party, with knowledge of the relevant facts, intentionally relinquishes the right to performance of a particular contractual obligation. A waiver may be based on verbal or written statements. Alternatively, a waiver may be implied by a party's conduct. In addition, a party who does not take steps to assert a breach of a contract's provisions and instead continues to accept benefits under that contract and who continues to perform under that contract may be deemed to have waived any rights to assert a breach of those provisions.

Geistlich claims that Luitpold failed to pay the "Net Sales" formula for the purchase price instead of the price Geistlich confirmed in Luitpold's purchase orders. Luitpold argues that it paid in full all amounts that Geistlich invoiced for the products sold under the Agreement, and that Geistlich never asked Luitpold to pay more. Luitpold also argues that over the course of its business relationship with Geistlich, Geistlich accepted the lower "transfer price" as payment under the Agreement and never asked Luitpold to pay the higher "purchase price." Luitpold also claims that the parties agreed not to pay the "Net Sales" formula on the one occasion when it was tried when Luitpold sought to recover overpayments from Geistlich. As a result, Luitpold argues that Geistlich has waived its right to now claim that Luitpold's payment of the "purchase price" in lieu of "transfer price" constitutes a breach of the Agreement.

Geistlich also claims that Luitpold breached Section 2.02 of the Bio-Oss Commercial Agreement by simultaneously marketing and selling a non-Geistlich product called GEM 21S.  Luitpold asserts that over the course of its business relationship with Geistlich, Geistlich was aware that Luitpold was openly and publicly marketing and selling GEM 21S, that Luitpold refused Geistlich's request to stop selling GEM 21S, and that Geistlich acquiesced in Luitpold's refusal and did not bring any action to stop Luitpold from selling GEM21S but instead elected to continue to operate under and enjoy the benefits of the agreements at issue while jointly developing a PDGF product with Luitpold.  As a result, Luitpold argues that Geistlich has waived its right to now claim that Luitpold's marketing and selling of non-Geistlich products such as GEM 21S at the same time as it was marketing and selling Geistlich's Bio-Oss and Bio-Gide products was a breach of Section 2.02 of the Bio-Oss Commercial Agreement.

If you find that Luitpold has met its burden of proof in establishing that the Geistlich waived either or both of these claims that Luitpold breached the Bio-Oss Commercial Agreement, you must find in favor of Luitpold on this affirmative defense.

**Authority**:  Fed. Jury Prac. & Instr. § 126:12 (6th ed.).

### 11.    Luitpold's Affirmative Defense of Laches and Delay

Luitpold asserts that Geistlich unreasonably delayed in bringing its claims for breach of contract, and that thus those claims are also barred by the equitable doctrine of laches.

The doctrine of laches bars recovery where a party's inaction or delay in initiating a lawsuit has prejudiced another party, making it inequitable to permit recovery.  The delay must be inexcusable under the circumstances, and must prejudice the defending party.  Prejudice, in this context, means to cause substantial harm.  Thus, to prove its affirmative defense of laches, Luitpold must show by a preponderance of the evidence that: (1) Geistlich inexcusably delayed making its claim; and (2) that Luitpold was substantially harmed as a result.

If you find that Geistlich's delay in asserting its claim for payment of the "purchase price" under the Bio-Oss Commercial Agreement was inexcusable, that this delay caused prejudice or harm to Luitpold, and that Luitpold has proven these things by a preponderance of the evidence, then you must find for Luitpold on this defense.

**Authority**:  *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997); *Guardian Music Corp. v. James W. Guercio Enterprises, Inc.*, 459 F. Supp. 2d 216, 223 (S.D.N.Y. 2006) aff'd, 271 F. App'x 119 (2d Cir. 2008);  *Saratoga County Chamber of Commerce, Inc. v. Pataki*, 100 N.Y.2d 801, 817, 798 N.E.2d 1047, 1055-56 (N.Y. 2003).

## IV.     SPECIFIC INSTRUCTIONS – DAMAGES

### 1.     Damages

If Geistlich has proven by a preponderance of the credible evidence that Luitpold is liable on Geistlich's breach of contract claims, then you must determine whether there are damages to which Geistlich is entitled.  However, you should not infer that Geistlich is entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only to give you guidance about how to decide whether Geistlich is entitled to recovery.

**Authority**:  Adapted from Sand, et al., Modern Federal Jury Instructions, Volume 4 (Civil), Instruction 77-1.

### 2.        Proximate Cause

A party is only entitled to recover damages for loss or harm that was proximately caused by the other party's breach of the contract, if any.  In law, a breach of contract is considered to have proximately caused a loss or harm if the breach was a substantial factor in bringing about the loss or harm.  Therefore, you may not award damages on any of Geistlich's claims for breach of contract unless you find that Luitpold's breach of contract, if any, was a substantial factor in bringing about Geistlich's loss or harm, if any.

**Authority:**  Adapted from New York Pattern Jury Instructions 2:70.

### 3.      Compensatory Damages

The purpose of the law of damages is to award just and fair compensation for the loss, if any, which may have resulted from a defendant's violation of the plaintiff's rights. If you find that Geistlich has proven by a preponderance of the evidence that Luitpold is liable on the claims as I have explained them, then you must determine the amount, if any, of damages needed to compensate Geistlich for any injury that you find was proximately caused by Luitpold's conduct.

These are known as "compensatory damages."  Compensatory damages seek to make the plaintiff whole – that is, to compensate him or her for the amount of damages suffered – no more, and no less.  Damages for a breach of contract should place the wronged party in as good a position as that party would have been if the breaching party had fully performed its obligations under the contract.

I remind you that you may award compensatory damages only for injuries that Geistlich proves were proximately caused by Luitpold's allegedly wrongful conduct. The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for injuries based on speculation about what injuries Geistlich may have suffered, but only for injuries that Geistlich has actually suffered.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense.  In computing damages, you must not engage in arbitrary guesswork.  You are to use your sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

**Authority**:  Adapted from Sand, et al., Modern Federal Jury Instructions, Volume 4 (Civil), Instruction 77-3.

### 4.    Lost Profits

Geistlich claims that it has lost profits as a result of Luitpold's breach of Section 2.02 of the Bio-Oss Commercial Agreement.  Lost profits is recognized as one method of proving the amount that would place a non-breaching party in the position it would have been in had the agreement been fulfilled on its terms.  However, there are stringent requirements for the recovery of lost profits.  Under New York law, Geistlich can only recover lost profits – to the extent there were any – if and only if it establishes by a preponderance of the evidence that:

(1)  the lost profit damages it claims to be entitled to were proximately caused by Luitpold's breach;

(2)  the existence and the amount of the lost profit damages can be proved with reasonable certainty; and

(3)  the lost profit damages were fairly within the contemplation of both Geistlich and Luitpold at the time the Bio-Oss Commercial agreement was made.

Lost profit damages may not be merely speculative, possible or imaginary.  They must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes.  In other words, to establish the existence and amount of lost profit damages, Geistlich must establish that the lost profit damages are capable of measurement based on reliable factors without undue speculation. Lost profit calculations that are based on a multitude of assumptions that require speculation and conjecture do not provide the required reasonable certainty to establish lost profit damages.

**Authority:**  *Care Travel Co., Ltd. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 994 (2d Cir. 1991); *Kenford Co., Inc. v. Erie County,* 67 N.Y.2d 257, 261, 493 N.E.2d 234 (1986).

5.        **Calculation of Lost Profit Damages**

To allow you to calculate the amount, if any, of Geistlich's lost profit damages, Geistlich must establish what additional revenues it would have received from Bio-Oss and/or Bio-Gide sales if Luitpold had not breached Section 2.02 of the Bio-Oss Commercial Agreement. Geistlich must also establish for you what costs, if any, it would have incurred in manufacturing the Bio-Oss and/or Bio-Gide sold to Luitpold. You would then calculate lost profit damages, if any, by subtracting Geistlich's costs from Geistlich's revenues.

In calculating lost profit damages, you must not be influenced by sympathy or dislike of any party in this case, or by a desire to "punish" a party. Lost profit damages are not allowed as a punishment against a party. You must also rely solely on the evidence of revenues and costs that Geistlich is actually able to establish, and must avoid engaging in arbitrary guesswork or speculation about what the amount of lost profit damages, if any, should be.

**Authority:** *Delchi Carrier Spa v. Rotorex Corp.*, 71 F.3d 1024, 1029-1030 (2d Cir. N.Y. 1995); *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995); *Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 92 (2d Cir. 1984); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 727 F. Supp. 2d 256, 286-287 (S.D.N.Y. 2010); *Alesayi Bev. Corp. v. Canada Dry Corp.*, 947 F. Supp. 658, 671 (S.D.N.Y. 1996).

6.        **Prejudgment Interest**

If you find Geistlich's favor on either of its breach of contract claims and award Geistlich damages as a result, then you must decide certain questions relating to what is referred to as "prejudgment interest." The law permits a party that has been awarded an amount of damages by a jury to also be awarded prejudgment interest on the amount awarded. Prejudgment interest is calculated for the period of time between the earliest date on which the cause of action accrued through the date you reached your verdict.

Prejudgment interest is not a penalty. It is designed only to make the aggrieved party whole by compensating it for being deprived of the monetary value of his or her loss from the time of the loss to the time you reached your verdict.

The law requires that you, as the triers of fact, fix the dates relevant to the computation of prejudgment interest. Again, the law is that the prevailing party may recover prejudgment interest on an award of damages from the earliest ascertainable date on which the cause of action accrued to the date you entered your verdict. With respect to Geistlich's claims for breach of contract, the cause of action accrued on the earliest ascertainable date that Luitpold breached the Agreements at issue.

Once you have determined the dates for which prejudgment interest should be applied, you need not do the mathematical calculations. You need only advise the court as to the date or dates from which you, based on the evidence that you have heard, have determined that such interest should run. The actual calculations will be done by the Clerk.

**Authority**:   Adapted from notes to New York Pattern Jury Instructions 4:20;
McKinney's NY CPLR §§ 5001 and 5003 and notes.

### 7.        Mitigation of Damages

You are instructed that any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to "mitigate," or minimize, those damages.  The law imposes on a party that, like Geistlich, claims to be injured, the duty to take advantage of reasonable opportunities that party may have to prevent the aggravation of any injuries, so as to reduce or minimize the loss or damage.  It is Luitpold's burden to prove that damages could have been reasonably mitigated, or minimized, by Geistlich.

If you find Luitpold is liable and that Geistlich has suffered damages, Geistlich may not recover for any injury it could have avoided through reasonable effort.  If you find that Luitpold has proven by a preponderance of the evidence that Geistlich unreasonably failed to take advantage of an opportunity to lessen its damages, you should deny recovery for those damages that Geistlich would have avoided had it taken advantage of the opportunity.

**Authority:**  Adapted from Sand, et al., Modern Federal Jury Instructions, Volume 4 (Civil), Instruction 77-7).

## V.    GENERAL INSTRUCTIONS – DELIBERATION

### 1.    Duty To Deliberate / Unanimous Verdict

You will now return to the jury room to decide the case.  In order to prevail, Geistlich or Luitpold must sustain their respective burdens of proof as I have explained to you with respect to each element of their claims or affirmative defenses.  If you find that Geistlich has succeeded, you should return a verdict in its favor on that claim.  If you find that Geistlich failed to sustain its burden on any element of its claims, you should return a verdict against it.  Similarly, if you find that Luitpold has failed to sustain its burden with respect to any element of any affirmative defense Luitpold has asserted, you must return a verdict against Luitpold on that defense.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

**Authority**: Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 78-3

### 2.    Deadlock Charge: Reaching Agreement

This case is important for parties.  The parties, as well as the court, have expended a great deal of time, effort and resources in seeking a resolution of this dispute.

It is desirable that a verdict be reached, but your verdict must represent the conscientious judgment of each juror.

While you may have honest differences of opinion with your fellow jurors during the deliberations, each of you should seriously consider the arguments and opinions of the other jurors.  Do not hesitate to change your opinion if, after discussion of the issues and consideration of the facts and evidence in this case, you are persuaded that your initial position is incorrect.  However, I emphasize that no juror should vote for a verdict unless it represents his or her conscientious judgment.

**Authority**: Adapted from 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 78-4.

**3.      Selection of Foreperson**

When you retire, you should elect one member of the jury as your foreperson.

That person will preside over the deliberations and speak for you here in open court.


**Authority**: Adapted from the instructions of Hon. Miriam Cedarbaum, Wires S.A. v. Sark-USA, Inc., Instructions at 2005 WL 6104366 (S.D.N.Y. 2005).

### 4.    Return of Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, will also sign and date it, and will advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that you should be in agreement with the verdict that is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

**Authority**: 4 L. Sand, et al., Modern Federal Jury Instructions: Civil ¶ 78-6