USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 17, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

LUITPOLD PHARMACEUTICALS, INC.,

                      Plaintiff,

      -v-                                  11-cv-681 (KBF)

ED. GEISTLICH SÖHNE A.G. FÜR         MEMORANDUM
CHEMISCHE INDUSTRIE, and              DECISION & ORDER
OSTEOMEDICAL LTD.,

                      Defendants.

------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      Pending before the Court are cross-motions for summary judgment on Luitpold Pharmaceuticals, Inc.'s ("Luitpold") claims IV and VI. (ECF Nos. 293, 305.) Luitpold asserts that defendants Ed. Geistlich Söhne A.G. Für Chemische Industrie and Osteomedical Ltd. (together, "Geistlich") breached two licensing agreements that granted Luitpold the exclusive right to use certain trademarks.

I.    LEGAL STANDARDS

    A.    <u>Summary Judgment</u>

      "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

      Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. <u>Wright v.</u>

Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."  Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995).  "However, '[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].'"  Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (first alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).  The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

      B.    Applicable Principles of Contract and Trademark Law

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).  The best evidence as to the meaning of a contract is the contract itself.  Gary Friedrich Enters., LLC v. Marvel Characters, Inc., 716 F.3d 302, 313 (2d Cir. 2013).  Principles of contract interpretation require a court to give effect to all of the contract's terms and to avoid any construction that renders any term meaningless.  Olin Corp. v. Am. Home Assurance Co., 704 F.3d 89, 99 (2d Cir. 2012).

A licensor can maintain its ownership of a trademark while granting a license that is exclusive to a licensee. Luitpold Pharmaceuticals, Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie, 784 F.3d 78, 86 (2d Cir. 2015) (citing 3 McCarthy on Trademarks and Unfair Competition § 18.44.50 (4th ed. 2015) ("if the license is exclusive to a licensee, then the licensor's own use in conflict with the licensed use can be a breach of contract because it is inconsistent with the licensee's exclusive right to use.")); see also Davis v. Blige, 505 F.3d 90, 99 (2d Cir. 2007) (observing that "exclusive licenses…grant to the licensee the exclusive right – superior even to copyright owners' rights – to use the copyrighted material in a manner specified in a license agreement"). Indeed, the licensor of a trademark is under an implied duty of good faith not to do anything that would impair the value of the licensee's exclusive rights. See 3 McCarthy, § 18.44. The parties' intent and reasonable expectations in entering a contract may inform these obligations of good faith. Cross & Cross Props., Ltd. v. Everett Allied Co., 886 F.2d 497, 502 (2d Cir. 1989).

II. FACTS

The facts relevant to resolution of this motion are undisputed. In 1994, Geistlich and Luitpold entered into an agreement whereby Geistlich conveyed certain marketing, trademark, and other rights to Luitpold in return for monetary payment; this is the so-called Commercial Agreement. At approximately the same time, the parties entered into a licensing agreement for the Bio-Oss product line. In 1998, the parties entered into an additional series of agreements, this time for the

3

Bio-Gide product line.  At the time the contracts were executed, Geistlich owned exclusive trademarks in the names Bio-Oss and Bio-Gide.

Both license agreements contain the following provision relevant to the Bio-Oss and Bio-Gide marks:

> LICENSEE [Luitpold] agrees that LICENSOR [Geistlich] is the exclusive owner of the TRADEMARKS and all of the goodwill thereto, and except for the rights licensed herein, LICENSOR shall retain the full rights to the TRADEMARKS, the goodwill relating thereto and all registrations granted thereon.

(License Agreement at ¶ 6.03.)  The parties and the Second Circuit refer to the phrase "except for the rights licensed herein" as the "carve out."  The relevant "rights licensed herein" are set forth in the GRANT provision at ¶ 3.02:

> (a) an exclusive, non-transferrable license without the right to sublicense except as expressly permitted…to market, sell, distribute and use the PRODUCT for the FIELD OF USE in the TERRITORY; [and]
> (b) an exclusive, non-transferrable license without the right to sublicense except as expressly permitted…to use the TRADEMARKS in the TERRITORY in connection with the marketing, sale, distribution, and USE of the PRODUCT for the FIELD OF USE.

(Id. at ¶ 3.02(a)-(b).) Another section of the agreement defines the term "Territory" as the United States and Canada.  (Id. at ¶ 1.08.)

Geistlich has conceded that it used the trademarks at issue in the United States, that is, within the Territory reserved to Luitpold, during the relevant time period.  In this regard, Geistlich has answered certain Requests for Admission in the following manner:

- "Geistlich admits that it directly or indirectly authorized the publication of those portions of Exhibit 12 to the Complaint[, which collected certain advertisements for Bio-Gide and Bio-Oss products

4

> published in the United States before the termination of the contract] which specifically reference Geistlich Bio-Gide and/or Geistlich Bio-Oss…" (RFA R 2);

- It admitted that "it did directly or through one or more affiliates authorize publication or otherwise used the Bio-Oss and/or Bio-Gide marks [in Luitpold's Territory during the term of the 1994 and 1998 Licenses] before the first use identified in Exhibit 12 to the Complaint" (RFA R 5); and

- It admitted that "[b]efore and after the 1994 and 1998 License Agreements were terminated, Defendant Geistlich maintained a website…and purchased space in scientific journals distributed" in Luitpold's territory and that its "website used the terms 'Geistlich Bio-Oss' and 'Geistlich Bio-Gide' as brand names for its products, and the information placed by Geistlich in internationally-distributed scientific journals utilized those terms as well" (RFA R 1, 3).

III. DISCUSSION

In a prior appeal of this case, the Second Circuit stated that the defendants had offered no persuasive reason not to conclude that Luitpold's rights to use the trademarks were exclusive of Geistlich's rights, notwithstanding Geistlich's retention of title. See Luitpold, 784 F.3d at 86. Geistlich has still not offered a persuasive reading to the contrary. Nor has it offered any extrinsic evidence which would support an alternative reading. Thus, the contract can and should be read in a straightforward manner: Luitpold had exclusive trademark rights with respect to the Bio-OSS and Bio-Gide products in the United States.[1]

---

[1] Even if this Court were to deem the provision ambiguous, there would nonetheless not be a triable issue. The extrinsic evidence is entirely one sided and supports Luitpold. That evidence is set out as attachments to the submissions on these motions. There are many exhibits and the Court will not recite them all – it is self-evident that they do not raise a triable issue.

5

Geistlich's argument that somehow this language should be read as an implicit retention of rights for its own use is belied by the agreement as a whole. The agreement clearly conveys exclusive marketing rights in the United States to Luitpold in return for substantial payment.  It is entirely reasonable to accompany this grant with similar exclusive trademark rights to the very products at issue.

In light of this clear contractual obligation,[2] Geistlich's admissions of use of the trademark in publications distributed in Luitpold's exclusive territory are sufficient to support its claims of breach.

Geistlich's motion for summary judgment argued that Luitpold failed to raise a triable issue of material fact as to its claim for damages from the contract violation, and thus failed to fully plead the elements of a breach of contract. However, as the Second Circuit has indicated, proof of compensatory damage is not required in this type of case – nominal damages are available.  See Luitpold, 784 F.3d at 87.  Luitpold's silence on the topic of compensatory damages does not, therefore, preclude granting its motion for partial summary judgment as to liability.

Geistlich's briefing also argues that Luitpold is not entitled to summary judgment because Luitpold has failed to address the affirmative defenses Geistlich raised in its answer to Luitpold's complaint. (ECF No. 38.)  Geistlich is correct that Luitpold has not squarely indicated the basis for a determination that Geistlich's affirmative defenses are insufficient to prevent its motion for partial summary judgment.

---

[2] The fact that this Court interpreted the contract incorrectly the first time around does not indicate any lack of clarity in the contract.  Having read the provision and gone back to the Court's prior decision, I have no idea how I could have gotten it so wrong.  We are all fallible.

Nonetheless, the extensive evidence submitted alongside the moving papers for summary judgment on Counts IV and VI leaves no doubt that Geistlich cannot carry its burden of proving the affirmative defenses it seeks to plead in relation to these counts.  When a plaintiff seeks summary judgment "whatever evidence <u>there is</u> to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving defendant, [but] there is 'no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim.'"  <u>FDIC v. Giammettei</u>, 34 F.3d 51, 54 (2d Cir. 1994) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)) (emphasis in original).  In this case the evidence, even construed in the light most favorable to Geistlich, demonstrated that Luitpold asserted its rights to exclusive use of the trademarks at issue throughout the relationship between the parties and did not assert any position inconsistent with its current position.  Geistlich has thus failed to present a triable issue of fact as to the affirmative defenses of waiver and estoppel.

IV.     CONCLUSION

For the reasons set forth above, Luitpold's cross-motion for partial summary judgment as to liability on its claims IV and VI is GRANTED and Geistlich's motion is DENIED. Luitpold is entitled to, at a minimum, a $1 judgment in nominal damages. The amount of compensatory damages, if any, will be determined in further proceedings.

The Clerk of Court is directed to terminate the motions at Docket Nos. 293 and 305.

SO ORDERED.

Dated:      New York, New York
            September 17, 2015

_____
KATHERINE B. FORREST
United States District Judge